**Harrison WELLFORD, Appellee,**

v.

**Clifford L. HARDIN, individually, and as Secretary of Agriculture, et al., Appellants.**

**No. 14904.**

United States Court of Appeals, Fourth Circuit.

Argued Feb. 11, 1971.

Decided May 25, 1971.

Albert V. Bryan, Circuit Judge, dissented and filed opinion.

Robert V. Zener, Atty., Dept. of Justice, Washington, D. C. (William D. Ruckelshaus, U. S. Asst. Atty. Gen., and George Beall, U. S. Atty., on brief) for appellants.

James J. Hanks, Jr., Baltimore, Md., for appellee.

Before SOBELOFF, BRYAN, and BUTZNER, Circuit Judges.

BUTZNER, Circuit Judge:

The Secretary of Agriculture appeals from an order of the district court enjoining the Consumer and Marketing Service of the Department of Agriculture from withholding from the public (1) letters of warning sent to meat and poultry processors; and (2) information with respect to the administrative detention of meat and poultry products.[1] The appeal requires us to construe the investigatory files exemption of the Freedom of Information Act [5 U.S.C. § 552(b) (7)] and to determine whether the due process clause dictates continued secrecy of the letters and detentions. Finding no statutory exemption or constitutional bar to the production of the requested records, we affirm.

The Poultry Products Inspection Act provides that the Secretary of Agriculture need not prosecute violators "whenever he believes that the public interest will be adequately served and compliance with the Act obtained by a suitable written notice or warning." 21 U.S.C. § 462 (1964). The Federal Meat Inspection Act contains a similar provision, except that the Secretary's option to issue a warning letter is limited to "minor violations." 21 U.S.C. § 676(b) (Supp. III, 1967). The Federal Meat Inspection Act and the Poultry Products

---

1. Wellford v. Hardin, 315 F.Supp. 175 (D.Md.1970).

Inspection Act also authorize the Secretary or his representative to detain for a period of up to 20 days any meat or poultry product which he has reason to believe is adulterated or misbranded, pending in rem condemnation proceedings or other action. 21 U.S.C. § 467a (Supp. IV, 1968); 21 U.S.C. § 672 (Supp. III, 1967).

Harrison Wellford, Executive Director of the Center for Study of Responsive Law, requested disclosure under the Freedom of Information Act, 5 U.S.C. § 552, of copies of all letters of warning issued since January 1, 1965, to any non-federally-inspected meat or poultry processor suspected of being engaged in interstate commerce. He also requested the name of each processor whose product had been detained since January 1, 1965, and information about the detention including the ultimate disposition of the products. The Administrator of the Consumer and Marketing Service denied the requests on the grounds that the records were investigatory files exempt from the mandatory disclosure provisions of the Act.

The Freedom of Information Act, 5 U.S.C. § 552, provides in pertinent part:

"(a) * * *

"(3) * * * each agency, on request for identifiable records made in accordance with published rules stating the time, place, fees to the extent authorized by statute, and procedure to be followed, shall make the records promptly available to any person. On complaint, the district court of the United States in the district in which the complainant resides, or has his principal place of business, or in which the agency records are situated, has jurisdiction to enjoin the agency from withholding agency records and to order the production of any agency records improperly withheld from the complainant. In such a case the court shall determine the matter de novo and the burden is on the agency to sustain its action * * *.

"(b) This section does not apply to matters that are—

* * * * * *

"(7) investigatory files compiled for law enforcement purposes except to the extent available by law to a party other than an agency * * *." [2]

We agree with the district court that the legislative history of this exemption reveals that its purpose was to prevent premature discovery by a defendant in an enforcement proceeding. The reports of the House Government Operations Committee and the Senate Judiciary Committee define the purpose of the exemption as the protection of the government's case in court.[3] Here the

2. The Department of Agriculture defines investigatory files in 7 CFR § 900.513(g) as follows:

"Investigatory files compiled for law enforcement purposes except to the extent available by law to a party other than the agency. This includes, but is not limited to, charges, complaints and other processes in connection with and prior to being filed in administrative or judicial proceedings; Office of Inspector General reports of investigation and all related correspondence; reports and related correspondence of the Compliance and Evaluation Staff of the Consumer and Marketing Service; and all other investigative, inspection, and accounting reports and supporting data assembled by the Consumer and Marketing Service and pertaining to compliance with laws or regulations."

3. S.Rep.No.813, 89th Cong., 1st Sess. (1965):

"Exemption No. 7 deals with 'investigatory files compiled for law enforcement purposes.' These are the files prepared by Government agencies to prosecute law violators. Their disclosure of such files, except to the extent they are available by law to a private party, could harm the Government's case in court."

H.Rep.No.1497, 89th Cong., 2nd Sess. (1966):

"Investigatory files compiled for law enforcement purposes except to the extent available by law to a private party: This exemption covers investigatory files related to enforcement of all kinds of laws, labor and securities laws as well as criminal laws. This would include files prepared in connection with

material sought under the Information Act was already in the hands of the parties against whom the law was being enforced. Unlike the request for a witness' statement in Barceloneta Shoe Corp. v. Compton, 271 F.Supp. 591 (D.P. R.1967), the request for records does not come from a party facing an enforcement proceeding to which the investigative material is germane. Warning letters and reports of detention are the written records of regulatory action already taken. They are not information gathering steps which must be shielded in order to protect the government from premature discovery in adjudicative proceedings.

■ The Department argues that the investigatory files exemption has other purposes which prohibit access to these records. Investigative agencies must be protected, it says, from disclosure of the identity of informants and investigative techniques. The plaintiffs, however, requested no more than the results of the enforcement actions and, at any rate, no more than was already in the hands of the companies who were warned or whose products were detained. Because the contents of these records are known by these companies, publication would not reveal secret investigative techniques.

■ The Department also contends that disclosure of enforcement records may discourage voluntary compliance with the Meat and Poultry Inspection Acts. Whatever the merits of the Department's argument,[4] it provides no excuse for withholding the records. The Freedom of Information Act was not designed to increase administrative efficiency, but to guarantee the public's right to know how the government is discharging its duty to protect the public interest.

The Department takes the position that the seventh exemption was intended to protect not only the investigator, but also the investigated. Public disclosure of information in investigatory files, it argues, may constitute an unwarranted invasion of the privacy of companies that have been investigated, and defamatory information contained in these files may damage their reputations. In support, the Department cites testimony before legislative committees that administrative files often contain "half-baked complaints," mere rumor, and unsubstantiated charges of wrongdoing. Again, the plaintiffs did not request complaints, half-baked or otherwise, but only the records of official enforcement actions.

■■ Of course, a company subject to a warning letter or detention action suffers a loss of privacy. The question, however, is whether the loss of privacy involved in disclosing the requested records is, as the Department contends, unwarranted. Congress has already answered the question by passing the Freedom of Information Act and the "overriding emphasis of its legislative history is that information maintained by the executive branch should become more available to the public." Attorney General's Memorandum on the Public Information Section of the Administrative Procedure Act, p. 1 (1967). After considering voluminous testimony on both sides and balancing the public, private, and administrative interests, Congress decided that the best course was

related Government litigation and adjudicative proceedings. [The Act] is not intended to give a private party indirectly any earlier or greater access to investigatory files than he would have directly in such litigation or proceedings."

4. A former Administrator cf the Consumer and Marketing Service flatly rejects the

Department's argument. He stated in an affidavit: "Disclosure of the letters would not be detrimental to the sound administration of the Federal Meat and Poultry Inspection programs * * *. Disclosure of detention information would not 'adversely affect the Federal Meat and Poultry Inspection programs.' "

open access to the governmental process with a very few exceptions. It is not the province of the courts to restrict that legislative judgment under the guise of judicially balancing the same interests that Congress has considered.

■ A broad construction of the exemptions would be contrary to the express language of the Act. See Bristol-Myers Co. v. FTC, 138 U.S.App.D.C. 22, 424 F.2d 935, 938 (1970). Section 552(c) provides that the Act "does not authorize withholding of information or limit the availability of records to the public, except as specifically stated * * *." Speaking of this provision, one commentator has said:

"The pull of the word 'specifically' is toward emphasis on statutory language and away from all else—away from implied meanings, away from reliance on legislative history, away from needed judicial legislation." K. Davis, The Information Act: A Preliminary Analysis, 34 U.Chi.L.Rev. 761, 783 (1967).

■ Professor Davis' admonition is pertinent to the issues in this case. By its terms, the seventh exemption applies only to investigatory files compiled for law enforcement purposes. The emphasis of the statute is upon the investigatory character of the files, and under § 552(c) the exemption should be limited "specifically" to files of this type. It should not be enlarged, we hold, to include records of administrative action taken to enforce the law.

While this case was pending on appeal, the Supreme Court decided Wisconsin v. Constantineau, 400 U.S. 433, 91 S.Ct. 507, 27 L.Ed.2d 515 (1971). There the Court declared unconstitutional a Wisconsin statute under which the chief of police, among others, was authorized to post a public notice in all local liquor retail outlets prohibiting the sale or gift of liquor to named individuals. The constitutional infirmity lay in the power of the police chief, without giving Mrs. Constantineau notice or an opportunity to be heard, to make the statutory determination that her excessive drinking exposed herself or her family to want or constituted a threat to the peace of the community. Such official action imposing a degrading label, the Court held, must be preceded by notice and an opportunity to defend.

The Department, observing that its letters of warning and detention orders are summary procedures, suggests an analogy between them and the posting that was condemned in *Constantineau*. Questions about the constitutionality of its letters of warning and detention orders can be avoided, it says, if we but construe the Freedom of Information Act to exempt the letters and reports from public disclosure.

■ The difference between a private individual and a regulated industry raises serious doubts about applying *Constantineau* to bar the public release of information concerning summary enforcement of laws governing a regulated industry. Indeed the Court prefaced its holding in *Constantineau* by cautioning: "Generalizations are hazardous as some state and federal administrative procedures are summary by reason of necessity or history." 400 U.S. at 436–437, 91 S.Ct. at 510. However, we need not rest our decision on the distinction between private persons and regulated industries. In the posture of this case, *Constantineau* is clearly inapplicable. The underlying defect in the Wisconsin statute was the lack of procedural due process in the steps that led to the "posting." Here, in contrast, neither party challenges the constitutionality of the procedures that culminate in warning letters or detention orders. Since the constitutionality of the Department's unpublicized enforcement of the Inspection Acts is accepted by both parties, the same proceedings are not rendered unconstitutional simply because a record of them is released to the public.

Affirmed.

ALBERT V. BRYAN, Circuit Judge (dissenting):

I think letters of warning constitute "investigatory files" exempted from disclosure under the Freedom of Information Act, 5 U.S.C. § 552(b) (7).

Such a communication is intended to assure fair play to a person who may *appear* to be in violation of any law. He may in good faith be entirely unaware of any wrongdoing, or circumstances may render the legality of his position simply uncertain. Presumably, he wants to obey the law. Admonishment from the Government agency may, indeed, evoke an explanation which would wholly dispel even the appearance of illegality and avoid the delay and expense of litigation.

But, divulge the warning and he is at once convicted or at least branded a lawbreaker. The public is quite willing to draw a sinister inference—for instance of questioned integrity—from the barest possibility of illegal conduct. Let the agency write a professional man, or anyone serving in a trust capacity, cautioning him that he may be in or nearing the breach of a statute, then make it available to the world, and the addressee is smeared inerasably. It matters not whether in truth there is a violation, or how inadvertent his deportment, and or how desirous he was from the very beginning to correct his deviation, if any. Protection of a citizen who upon receiving a warning letter complies with the law is a legitimate use of exemption (7) of the Act.

To say that Congress "by passing the Freedom of Information Act" has already resolved this predicament against the citizen is to beg the question, for the very question here is whether the Act does so. I am reluctant to believe Congress intended to expose him so unfairly to the stigma of accusation. On these grounds I would reverse the judgment of the District Court in regard to warning letters.