McNeill **STOKES** and Lewis C. Barbe

v.

James D. **HODGSON**, Secretary of Labor,
United States Department of Labor.

Civ. A. No. 17058.

United States District Court,
N. D. Georgia,
Atlanta Division.

Sept. 25, 1972.

**1372**

Stokes, Boyd & Shapiro, Atlanta, Ga., for plaintiffs.

John W. Stokes, Jr., U. S. Atty., Charney K. Berger, Asst. U. S. Atty., Atlanta, Ga., for defendant.

## ORDER

EDENFIELD, District Judge.

This is an action to compel the production of certain training manuals and teaching aids used by the Occupational Safety and Health Administration ["OSHA"] of the United States Department of Labor. Jurisdiction is vested in this court by 5 U.S.C. § 552 (1970), commonly referred to as the "Freedom of Information Act" ["the Act"]. In view of the requirement that cases of this nature be "expedited in every way", 5 U.S.C. § 552(a)(3), this court entered an order September 12, 1972 granting plaintiffs the relief requested, and it reserved the filing of an opinion for a later date.

Plaintiff Stokes is an attorney who represents, among other clients, the American Subcontractors Association and who has written a book about the Occupational Safety and Health Act of 1970, 29 U.S.C. § 651 et seq. (1970). Plaintiff Barbe is a registered certified professional safety engineer and vice-president of the Houston General Insurance Group, Fort Worth, Texas. Both plaintiffs were scheduled to testify in June of this year at hearings on "Small Business and the Occupational Safety and Health Act of 1970" before the Subcommittee on Environmental Problems Affecting Small Business of the United States House of Representatives. In order to prepare their testimony, they made written requests to obtain copies of OSHA's training manuals which are used to instruct OSHA compliance inspectors. Both were interested in inspecting these manuals for the further purpose of advising their clients on the requirements of the Occupational Safety and Health Act. Plaintiffs' requests were denied successively by OSHA's Office of Training, by OSHA's Office of Program Operations, and by the Solicitor of the Department of Labor. This lawsuit followed.

Section 552(a) provides in relevant part:

" * * * (2) Each agency, in accordance with published rules, shall make available for public inspection and copying—

* * * * * *

(C) administrative staff manuals and instructions to staff that affect a member of the public . . . "

Section 552(b) provides in relevant part:

"This section does not apply to matters that are—

\* \* \* \* \* \*

(2) related solely to the internal personnel rules ·and practices of an agency;

\* \* \* · \* \* \*

(5) inter-agency or intra-agency memorandums or letters which would not be available by law to a party other than an agency in litigation with the agency. . . . "

Plaintiffs contend that the training manuals and teaching aids they wish to inspect are "administrative staff manuals and instructions to staff that affect a member of the public" and must be made available to them under § 552(a)(2)(C). The Secretary, in his brief, does not contest plaintiffs' contention that the material they seek meets the definition of § 552(a)(2)(C). Rather, he insists that this material is exempt from production under § 552(b)(2) and (5). Accordingly, the only question before the court is whether the two cited exceptions to the Act, which the court must construe narrowly, Bristol-Myers Co. v. F. T. C., 138 U.S.App.D.C. 22, 424 F.2d 935, 938 (1970); M. A. Schapiro & Co. v. S.E.C., 339 F.Supp. 467, 469 (D.D.C.1972); see 5 U.S.C. § 552(c),[1] apply to the OSHA training manuals and teaching aids sought by plaintiffs. For this purpose the Secretary made available to the court for in camera inspection the OSHA training manuals.

As the court reads § 552(b)(2), its plain words except from the disclosure requirements of the Act general intra-agency housekeeping rules and practices such as those related to work schedules, office assignment, parking facilities, leaves of absence, and the like. Benson v. General Services Administration, 289 F.Supp. 590 (N.D.Wash.1968), aff'd., 415 F.2d 878 (9th Cir. 1969).

The OSHA training manuals, on the other hand, instruct OSHA compliance inspectors about the structure of OSHA, the legal framework within which OSHA operates, the obligations and rights of employers and employees under OSHA, the specific duties of ,compliance inspectors and the best methods for carrying out these duties, the detailed health and safety standards of the Occupational Safety and Health Act of 1970, the proper emphasis to be placed on different types of health and safety violations, and the proper methods to assess penalties for health and safety violations. The manuals as a whole simply do not consist of matters "related solely to the internal personnel rules and practices" of either OSHA or the Department of Labor.

The question concerning the applicability of § 552(b)(2) would end· right there were it not for the controversy concerning the legislative history of this provision. As Professor Kenneth Culp Davis has noted, the most useful legislative history concerning the Act is found in a Senate report and a House report, S.Rep. No. 813, 89th Cong., 1st Sess. (1965), and H.R.Rep. No. 1497, 89th Cong., 2d Sess. ·(1965). Davis, The Information Act: A Preliminary Analysis, 34 U.Chi.L.Rev. ·761, 762 (1967). Those courts which have directly considered the matter uniformly favor the Senate Report over the House Report on the grounds that the Senate Report is more faithful to the words of the Act and that when the House considered the bill which resulted in the Act it already had before it the Senate Report interpreting the Senate version and it passed the Senate version without any changes. Getman v.· N.L.R.B., 146 U.S.App.D.C. 209, 450 F.2d 670, 673–674, n. 8 (1971); Consumers Union of United States, Inc. v. Veterans Admin., 301 F.Supp. 796, 800, 801 (S.D.N.Y.1969), appeal dismissed as moot, 436 F.2d 1363 (2d Cir. 1971); Benson v. General Services Administration, *supra*, 289 F.Supp. at 594–595. *Cf.*

---

1. "This section does not authorize withholding of information or limit the availability of records to the public, *except as* *specifically stated* ·in this section." (Emphasis added.)

Frankel v. S.E.C., 460 F.2d 813, 816, n. 5 (2d Cir. 1972). The Attorney General has issued a pamphlet concerning the Act for the guidance of federal agencies, Department of Justice, Attorney General's Memorandum on the Public Information Section of the Administrative Procedure Act (1967), and the memorandum often follows the House Report. As Professor Davis has written,

> "In general, the Senate committee is relatively faithful to the words of the Act, and the House committee ambitiously undertakes to change the meaning that appears in the Act's words. The main thrust of the House committee remarks that seem to pull away from the literal statutory words is almost always in the direction of nondisclosure. The Attorney General's Memorandum consistently relies on such remarks by the House committee." Davis, *supra,* at 763.

The Senate Report has this to say about § 552(b)(2):

> "Exemption No. 2 relates only to the internal personnel rules and practices of an agency. Examples of these may be rules as to personnel's use of parking facilities or regulation of lunch hours, statements of policy as to sick leave, and the like." S.Rep. No. 813, at 8.

The House Report says this:

> "Matters related solely to the internal personnel rules and practices of any agency: Operating rules, guidelines, *and manuals of procedure for Government investigators or examiners would be exempt* from disclosure, but this exemption would not cover all 'matters of internal management' such as employee relations and working conditions and routine administrative procedures which are withheld under the present law." H.R. Rep. No. 1497, at 10. (Emphasis added.)

Finally, the Secretary cites the following from that portion of the Attorney General's Memorandum which discusses § 552(b)(2):

> "[A]n agency must keep secret the circumstances under which it will conduct unannounced inspections or spot audits or supervised transactions to determine compliance with regulatory requirements. The moment such operations become predictable, their usefulness is destroyed." Attorney General's Memorandum, *supra,* at 31.

The court believes that the words of § 552(b)(2) are sufficiently clear to render less necessary resort to legislative history. *See generally,* H. Hart & A. Sacks, The Legal Process, 1243–1286 (Tent. ed. 1958). Nevertheless, the court ventures the view that the Senate Report accurately explains the meaning of § 552 (b)(2) while the House Report contradicts it. The Attorney General appears to follow the erroneous interpretation of the House committee. As Professor Davis has concluded,

> "[The Senate committee] statement seems fully faithful to the words of the statute.
>
> "But the House committee, once again, tries to change the meaning of the legislative language . . .
>
> "As usual, the Attorney General's Memorandum assumes that what the House committee says is the law. It does not mention that the Senate committee said something altogether different. Nor does it set forth an analysis of the statutory words.
>
> "My opinion is that the words 'internal personnel rules' mean what the Senate committee says, not what the House committee and the Attorney General say." Davis, *supra* at 785–786.

The Secretary also cites two cases to support its position on § 552(b)(2). In City of Concord v. Ambrose, 333 F. Supp. 958 (N.D.Cal.1971), a police officer and a California city sought to compel the Commissioner of Customs to disclose certain texts used by the Bureau of Customs to train law enforcement agents in conducting effective surveillance of suspected and known violators of the customs laws and brought suit under the

Act. The holding in that case was that the customs texts did not fall within the definition of § 552(a)(2)(C) ("administrative staff manuals and instructions to staff that affect a member of the public") and were not otherwise disclosable under § 552(a)(3).

In the present case, as noted at the outset, the Secretary has not contended that the OSHA material does not fall within the definition of § 552(a)(2)(C).[2] While it is true that the court in *City of Concord* also discussed the possible applicability of the § 552(b)(2) and (5) exemptions to the customs texts, that discussion was labeled dicta by the court itself and did not lead to any firm conclusions.

In Cuneo v. Laird, 338 F.Supp. 504 (D.D.C.1972), appeal docketed, No. 72–1328, D.C.Cir., April 11, 1972, certain defense contractors sought to compel the Department of Defense to disclose portions of the Contract Audit Manual of the Department's Defense Contract Audit Agency which had never been made public. The Manual sets forth certain approaches and procedures whereby accurate audits are insured even without an item-by-item audit of every contract. The court said that disclosure of the Manual "would be comparable to requiring one football team to give its 'play-book' to the opposing team before a game" and "might well result in bilking the Government, and hence the taxpayers, of hundreds of millions of dollars on Defense Contracts." Cuneo v. Laird, *supra,* at 506. However, the court there did not discuss the specific statutory provisions of the Act and simply concluded, without more, that the Manual was exempt from disclosure under § 552 (b)(2) and (5).

While the court may sympathize with the judicial reaction in Cuneo v. Laird, it finds itself bound by the rather straightforward language Congress has employed

---

2. The thrust of the opinion in *City of Concord* was that the customs texts were *law enforcement* manuals, not *"administrative"* manuals, and therefore not discoverable under the Act as interpreted by both the Senate and House reports.

The House Report sustains the view that the customs texts are not discoverable. It says:

"[A]n agency may not be required to make available those portions of its staff manuals and instructions which set forth criteria or guidelines for the staff in auditing or inspection procedures, or in the selection or handling of cases, such as operational tactics, allowable tolerances, or criteria for defense, prosecution, or settlement of cases." H.R.Rep.No.1497, *supra* at 7–8.

The Senate Report, which noted that the word "administrative" had not appeared in an earlier version of the Senate bill, explained the addition as follows:

"The limitation of the staff manuals and instructions affecting the public which must be made available to the public to those which pertain to administrative matters rather than to law enforcement matters *protects* the traditional confidential nature of *instructions to Government personnel prosecuting violations of law in court, while*

*permitting a public examination of the basis for administrative action."* S. Rep.No.813, *supra,* at 2. (Emphasis added.)

Thus while the House Report supports the result reached in *City of Concord* (and, incidentally, the result in Cuneo v. Laird discussed later in the text of this court's opinion), the Senate Report undercuts any argument that this court should follow *City of Concord* since no claim can be made that OSHA compliance inspectors prosecute violations of the law in any court. *See, generally,* Davis, *supra,* 778–779.

In any event, had the Secretary argued that the OSHA material did not fall within the definition of § 552(a)(2)(C), the court would have foregone analysis of the legislative history and ruled that, on the basis of the plain words of the statute, the OSHA training manuals were "administrative staff manuals and instructions to staff that affect a member of the public." They are "administrative," they are "staff manuals," they do contain "instructions to staff," and they do "affect a member of the public" since they deal with the method in which the Occupational Safety and Health Act of 1970, which applies to millions of employers and employees, should be administratively enforced.

in the Act. In this regard, the concurring opinion of Judge MacKinnon of the District of Columbia Circuit, in Getman v. N.L.R.B., *supra*, is instructive. In *Getman* several law professors engaged in an N.L.R.B. voting study sought to compel the Board to disclose a number of lists of names and addresses of employees eligible to vote in certain N.L.R.B.-supervised elections. After thoroughly analyzing the provisions of the Act, especially those exceptions which the Board contended were applicable, the court held that the Board had to disclose the names and addresses. In his concurring opinion Judge MacKinnon expressed concern over the possible abuses of the Act which might result in the future, but he pointed out that the "extremely broad sweep" of the Act made it "mandatory" that the court order disclosure, and he added that Congress would have to handle any necessary amendments to the Act. Getman v. N.L.R.B., *supra*, 450 F.2d at 680–681 (concurring opinion). As noted already, Cuneo v. Laird is now on appeal to the District of Columbia Circuit.

The Secretary's second argument fares no better. In his brief he contends that because the OSHA manuals are used solely to advise OSHA personnel they are therefore "inter-agency or intra-agency memorandums or letters which would not be available by law to a party other than an agency in litigation with the agency" and exempt under § 552(b)(5).

■■ The exemption contained in § 552(b)(5) is a congressional reaffirmation of the doctrine of executive privilege which courts have used to protect intragovernmental documents reflecting policy deliberations from disclosure. Ackerly v. Ley, 137 U.S.App.D.C. 133, 420 F.2d 1336, 1341 (1969); Freeman v. Seligson, 132 U.S.App.D.C. 56, 405 F.2d 1326, 1339 (1968). While the exemption is intended to protect the free exchange of ideas *among government policy makers*, Soucie v. David, 145 U.S.App.D.C. 144, 448 F.2d 1067, 1077 (1971); Ackerly v. Ley, *supra*, it does not authorize a federal agency to "throw a protective blanket over all information by casting it in the form of an internal memorandum." Bristol-Myers Co. v. F.T.C., *supra*, 424 F.2d at 939.

In Wu v. National Endowment for Humanities, 460 F.2d 1030 (5th Cir. 1972), cited by the Secretary, a college professor applied to the Endowment, a federal agency, for a $70,000 grant to produce a book on Chinese history. The Endowment, in its usual course, referred the application and accompanying proposal to a committee of outside experts who gave the Endowment their opinions. The experts recommended that the application be denied. Eventually, the Endowment did deny Professor Wu's application, whereupon Professor Wu brought suit under the Act to compel disclosure of the substance of the experts' opinions and evaluations. The Fifth Circuit held that the experts' opinions and recommendations fell within the exemption of § 552(b)(5) because they constituted "internal working papers" in which opinions were expressed as part of the agency's "deliberative processes." The court also held that the exemption applied even though the experts were not technically agency employees.

■ Apparently unlike the Secretary, the court finds nothing in *Wu* which is inconsistent with the discussions of § 552(b)(5) found in other cases. *Wu* speaks of documents which reflect an agency's deliberative processes much the same as previous cases do. In the present case, however, the OSHA training manuals consist simply of instructions to OSHA compliance inspectors. These manuals are not advisory opinions, position papers, policy recommendations, or other such intragovernmental documents concerned with the deliberative processes of OSHA or the Department of Labor. The court is not persuaded that the manuals fall within the exemption of § 552(b)(5).

■■ Finally, the Secretary argues that plaintiffs have no real need for these manuals and that the substantive portions of the manuals are available to the public in other publications. However, as the court has already noted, the Act pro-

vides that information may be withheld only if one of the specific exceptions of the Act applies. 5 U.S.C. § 552(c). This court has no equitable jurisdiction to deny disclosure where the Act requires it by its terms. Getman v. N.L.R.B., *supra,* 450 F.2d at 678; Wellford v. Hardin, 444 F.2d 21, 24–25 (4th Cir. 1971).

Under the Act the Secretary has the burden to sustain the action he took in this case. 5 U.S.C. § 552(a)(3). Having considered the Secretary's arguments, the court holds that the Secretary did not sustain his burden.