**LEGAL AID SOCIETY of ALAMEDA COUNTY, et al., Plaintiffs,**

v.

**George SHULTZ, et al., Defendants.**

No. C–72–976.

United States District Court, N. D. California.

Oct. 19, 1972.

⊶14

Stephen E. Ronfeldt, Russell W. Galloway, Jr., Stefan M. Rosenzweig, Legal Aid Society of Alameda County, Oakland, Cal., for plaintiffs.

James L. Browning, Jr., U. S. Atty., Richard F. Locke, Asst. U. S. Atty., San Francisco, Cal., for defendants.

## ORDER

ZIRPOLI, District Judge.

This is an action brought pursuant to the Freedom of Information Act, 5 U.S. C. § 552, to force the Department of the Treasury to make available various records relating to the Department's enforcement of Executive Order No. 11246, 3 C.F.R. 339, which mandates that the federal government's economic power as a consumer be affirmatively used to prevent racial discrimination in employment. Specifically, plaintiffs desire that the court order the Department to disclose:

(1) a list of the names of all federal nonconstruction contractors assigned to the Department of the Treasury for compliance purposes under Executive Order No. 11246 that are subject to the requirements of 41 C.F.R. § 60–1.40 (developing an affirmative action program) and that have an establishment in Alameda County, California;

(2) all written affirmative action programs currently in effect that have been submitted to the Department by any of the contractors identified in (1);

(3) all EEO–1 reports and any other minority hiring reports containing statistics concerning the ethnic composition of a contractor's work force prepared since November, 1969, that have been submitted to the Department by any of the contractors identified in (1);

(4) all compliance review reports prepared since November, 1969, by compliance officers of the Department of the Treasury that concern any of the contractors identified in (1).

A request for these documents was made in one or another of a series of letters the plaintiffs sent to appropriate Department of the Treasury officials between December, 1971, and February,

1972. The Department refused to provide the information and an appropriate appeal was taken, as this court held in its order denying defendants' motion for summary judgment, August 25, 1972.

The parties have now filed cross-motions for summary judgment, agreeing that there is no dispute as to any material fact.

## I.

The various contentions of the parties depend in large part upon how the Freedom of Information Act ought to be interpreted by the courts. The answer to this basic question is clear from the legislative history and purposes of the Act, and from the Act's explicit provisions.

The purpose of the Act is expressed concisely in the Report of the Senate Judiciary Committee:

Knowledge will forever govern ignorance and a people who mean to be their own governors, must arm themselves with the power knowledge gives. A popular government without popular information or the means of acquiring it, is but a prologue to a farce or a tragedy or perhaps both.

S.Rep.No.813, 89th Cong., 1st Sess. 9 (1965).

The practices of administrative agencies prior to the passage of the Freedom of Information Act did not comport with this fundamental principle of democratic government.

Under [the predecessor of the Freedom of Information Act], the 1946 Administrative Procedure Act, only persons "properly and directly concerned" could obtain access to agency records. Documents could be withheld from even this restricted group "in the public interest," or whenever "good cause [for confidentiality]" was shown. There was no provision for judicial review of agency refusals to disclose information.

J. Katz, The Games Bureaucrats Play, 48 Texas L.Rev. 1261 (1970). The reports of both the House of Representatives and of the Senate condemn the practices this loosely drafted statute permitted. The House Report notes:

In the time it takes for one generation to grow up and prepare to join the councils of Government—from 1946 to 1966—the law which was designed to provide public information about Government activities has become the Government's major shield of secrecy.

H.R.Rep.No.1497, 89th Cong., 2d Sess. 13 (1966). The Senate Report adds the important observation that: "Innumerable times it appears that information was withheld only to cover embarrassing mistakes or irregularities . . . ." S. Rep.No.813, *supra* at 3.

Congress tried to be careful in drafting the Freedom of Information Act to assure that their work would result in genuine change. Its hope was "to eliminate the loopholes which allowed agencies to deny legitimate information to the public and to establish a general philosophy of full agency disclosure unless information is exempted under clearly delineated statutory language." S.Rep. No.813, *supra* at 3.

The basic tool employed to reach this goal was § 552(c), which states the premise with which a court must begin in reviewing an agency's refusal to disclose requested information:

This section does not authorize withholding of information or limit the availability of records to the public, except as specifically stated in this section.

The importance Congress placed upon this provision is explained by the Senate Report:

The purpose of [§ 552(c)] is to make it clear beyond doubt that all materials of the government are to be made available to the public by publication or otherwise unless explicitly allowed to be kept secret by one of the exemptions of subsection (b).

S.Rep.No.813, *supra* at 10. The intent to make the new rule one of general disclosure is also manifest in the Freedom of Information Act's direction that an

agency refusing to disclose shall have the burden of proving that the refusal was proper. § 552(a)(3). Taken together, §§ 552(c) and 552(a)(3) mean that in this case the Department of the Treasury must bear the burden of proving that the records it refused to disclose are specifically included in one of the exceptions of § 552(b).

## II.

The Department has attempted to sustain its burden by arguing that the documents plaintiffs requested are within at least one of three exceptions of § 552(b): (3), (4), and (7).

## A.

▉ The first of these exceptions, § 552(b)(3), permits the Department to refuse to disclose "matters that are . . . specifically exempted from disclosure by statute." The statute the Department relies upon is Section 709(e) of Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000(e)—(8)(e):

It shall be unlawful for any officer or employee of the [Equal Employment Opportunity] Commission to make public in any manner whatever any information obtained by the Commission pursuant to its authority under this section prior to the institution of any proceeding under this subchapter involving such information.

The Department argues that because of this statute it cannot disclose either the EEO–1 reports or compliance review reports. EEO–1 reports are not submitted directly to the Department, but are sent to the Joint Reporting Committee, which then forwards copies to both the federal compliance agency for Executive Order No. 11246—in this case, the Department of the Treasury—and to the EEOC. Thus, the Joint Reporting Committee represent both the Department and the EEOC in receiving the information. Because of this, the Department argues, the information it receives is protected from disclosure by § 709(e). Moreover, because the compliance review

reports are based primarily on the EEO–1 reports, they, too, are protected from disclosure.

The difficulty with this argument is that a close reading of all of § 709 makes it clear § 709(e) is inapplicable. The only information controlled by § 709(e) is that "obtained by the Commission pursuant to its authority under this section"—i. e., section 709—and then it is only officers and employees of the EEOC who are forbidden to make disclosures. Section 709(c) is the source of the EEOC's power to require reports; it provides: *"Except as provided in subsection (d) of this section,* every employer . . . subject to this subchapter shall . . . (3) make such reports . . . as the Commission shall prescribe. . . ."* (Emphasis added.) Subsection (d) limits the Commission's power to require reports in certain cases. One of these cases is the present one:

Where an employer is required by . . . any other Executive order prescribing fair employment practices for Government contractors or subcontractors, or by rules or regulations issued thereunder, to file reports relating to his employment practices with any Federal agency or committee, and he is substantially in compliance with such requirements, the Commission shall not require him to file additional reports pursuant to subsection (c) of this section.

The contractors whose EEO–1 reports plaintiffs have requested to see are required to file those reports by Executive Order No. 11246, § 203(a) and 42 C.F.R. § 60–1.7 enacted thereunder. Thus, § 709 does not permit the EEOC to require these contractors to file any reports; the EEOC is merely permitted to see those reports that other agencies require.

It is, therefore, clear that the prohibition of § 709(e) against disclosure is inapplicable; certainly that provision cannot be read to forbid the disclosure by the Department of the Treasury of in-

formation the Department requires contractors to reveal under the Executive Order merely because the EEOC is allowed—other than by § 709—to see that information. Such a disclosure simply is not—even indirectly—the act of an officer or employee of the EEOC making public information obtained under § 709.

In addition to alluding to § 709(e) itself, the Department quotes in its brief a portion of the "General Information" section of the EEO–1 reports. The section quoted is:

### 7. CONFIDENTIALITY

All reports and information from individual reports will be kept confidential, as required by section 709(e) of Title VII. Only data aggregating information by industry or area, in such a way as not to reveal any particular employer's statistics, will be made public.

Section 709(e) provides: [the instructions then quote all of § 709(e)].

Without ever explicitly making the argument, the Department seems to suggest that in this statement the government has promised confidentiality and, having given its word, ought to be permitted to keep it.

If the Department does intend to make this argument, the court rejects it, just as the Supreme Court rejected the same argument in St. Regis Paper Co. v. United States, 368 U.S. 208, 82 S.Ct. 289, 7 L.Ed.2d 240 (1961). There the issue was whether census form copies in the files of reporting companies were discoverable by the FTC pursuant to § 6(b) of the Federal Trade Commission Act, 15 U.S.C. § 46(b). Companies had been advised by the Census Bureau that the copies were nondiscoverable and legends on the forms themselves indicated that they were confidential. Nevertheless, after finding no statute in fact made the forms confidential, the Court refused to hold them nondiscoverable merely because of the administrative promises. Similarly, administrative promises of confidentiality cannot extend the command of the Freedom of Information Act that only matters "specifically exempted from disclosure by *statute*" are protected under § 552(b)(3). Nor can this court extend that limitation; it is now well settled that because of the specific command of § 552(c), discussed above, the courts have no discretion to refuse to order disclosure on equitable principles. *See* Getman v. NLRB, 450 F.2d 670, 677–680 (D.C.Cir. 1971); Soucie v. David, 448 F.2d 1067, 1076–1077 (D.C.Cir. 1971).

### B.

The second exception the Department claims to be applicable is § 552(b)(4): "matters that are . . . trade secrets and commercial or financial information obtained from a person and privileged or confidential." This exception, the Department argues, prevents disclosure of the compliance review reports, because those reviews are conducted with the understanding that the information obtained will be confidential. Accordingly, financial institutions have revealed plans for future expansion, proposed reductions in work force, mergers, and other similar information that could adversely affect the institutions if released. Also, some compliance reviews include information of a confidential nature concerning particular employees' career patterns and plans. That this type of information is in fact in some of the compliance review reports is supported by the affidavit of David A. Sawyer, Director of the Equal Opportunity Program of the Department of the Treasury.

The court need not consider the issue of whether information of this type that is gathered in the course of a compliance review would fit within the exception of § 552(b)(4), because plaintiffs have disclaimed any desire to see those portions of any of the documents they requested relating to such matters. The court, therefore, intends to express no opinion on this issue.

This, however, does not mean that the Department can refuse to disclose all of the document containing this type of information. The rule is now clearly established that:

It is a violation of the Act to withhold documents on the ground that parts are exempt and parts nonexempt. In that event, "suitable deletions" may be made. . . .

Wellford v. Hardin, 315 F.Supp. 768, 770 (D.D.C.1970). Accordingly, the court will order that the Department present to the court for *in camera* inspection any of the requested documents that the Department believes to contain confidential information relating to plans for expansions, reductions, mergers, particular employees' career patterns, or similar matters together with suggested deletions and an explanation concerning each proposed deletion.

### C.

The final exception the Department suggests is applicable, § 552(b)(7), provides: "matters that are . . . investigatory files compiled for law enforcement purposes except to the extent available by law to a party other than an agency."

 First, it is clear that this exception at most only could apply to the compliance review reports, and not to any information supplied to the Department by a contractor. The purpose of § 552(b)(7) is to prevent "harm [to] the government's case in court" by allowing an opposing litigant "any earlier or greater access to investigatory files than he would otherwise have." S.Rep.No. 813, *supra* at 9; H.R.Rep.No.1497, *supra* at 11. As was noted in Wellford v. Hardin, 315 F.Supp. 175, 178 (D.Md.1970), aff'd, 444 F.2d 21 (4th Cir. 1971), "Disclosure of material already in the hands of potential parties to law enforcement proceedings can in no way be said to interfere with the agency's legitimate law-enforcement functions," and, therefore, such material is not within the exception of § 552(b)(7).

It may be that for the same reason even compliance review reports are not within this exception. 41 C.F.R. § 60–1.20(b) appears to contemplate that the results of a compliance review will be communicated to the contractor reviewed. To the extent such disclosures are made to the contractor, the general public would certainly have a right to see the review reports. *See* Wellford v. Hardin, 444 F.2d 21 (4th Cir. 1971) (warning letters sent to persons involved must be disclosed under § 552).

 The court, however, need not rely upon uncertain speculation about what disclosures may be mandated by 41 C.F.R. § 60–1.20(b). In any case, the exception of § 552(b)(7) is inapplicable because the Department has failed to carry the burden of proving that the compliance reviews are "investigatory files compiled for law enforcement purposes." The court believes that Bristol-Myers Co. v. FTC, 138 U.S.App.D.C. 22, 424 F.2d 935, 939 (D.C. Cir.), cert. denied, 400 U.S. 824, 91 S.Ct. 46, 27 L. Ed.2d 52 (1970), is correct in the observation that:

[T]he agency cannot, consistent with the broad disclosure mandate of the Act, protect all its files with the label "investigatory" and a suggestion that enforcement proceedings may be launched at some unspecified future date. Thus, the District Court must determine whether the prospect of enforcement proceedings is concrete enough to bring into operation the exemption for investigatory files.

In the present case the only evidence that there might be some enforcement proceeding is the statement in the affidavit of Mr. Sawyer that compliance reviews are being made concerning several contractors pursuant to plaintiffs' request. This may imply that enforcement proceedings may be commenced at some indefinite future date, but it does not show a prospect of future enforcement concrete enough to merit allowing the Department to refuse to disclose the compliance reviews pursuant to § 552(b)(7).

### III.

In addition to arguing that nondisclosure is permitted by reason of the various exceptions of § 552(b) discussed above, the Department argues that it is under no duty to disclose because the plaintiffs have not requested "identifiable records" within the meaning of § 552(a)(3). Rather incredibly, the Department corresponded with plaintiffs about their request over the course of several months without once raising this as a reason for nondisclosure. Moreover, in replies to plaintiffs' requests and in the course of this litigation the Department has made statements leaving little doubt that it knows precisely what plaintiffs desire. This is made particularly clear in the affidavit of Mr. Sawyer. At one point the affidavit notes that the records of the Department are not kept by county, and thus suggests that the Department therefore could not reply to a request for records concerning those contractors with establishments in Alameda County. Yet, later in the same affidavit Mr. Sawyer declares that pursuant to plaintiffs' request that compliance reviews be conducted at "banking and savings and loan institutions in Alameda County," compliance reviews are being conducted at fifteen such institutions, which Mr. Sawyer lists by name. This leaves no doubt that the Department, except when it is myopically searching through files to see as little as possible, can discover information based on plaintiffs' description. Because of this, the court holds that plaintiffs have requested "identifiable records" within the meaning of § 552(a)(3).

In requiring that those seeking documents request "identifiable records," Congress was not creating a new loophole that would allow agencies to continue to escape their responsibility to disclose information.

> The statutory requirement that a request for disclosure specify "identifiable records" calls for "a reasonable description enabling the Government employee to locate the requested records," but it is "not to be used as a method of withholding records."

Bristol-Myers Co. v. FTC, 424 F.2d 935, 938 (D.C. Cir.), cert. denied, 400 U.S. 828, 91 S.Ct. 46, 27 L.Ed.2d 52 (1970), *quoting* S.Rep.No.813, *supra* at 8. Consistent with this policy, the Attorney General has directed all government agencies:

> Agencies should keep in mind, however, that the standards of identification applicable to the discovery of records in court proceedings are appropriate guidelines, and that their superior knowledge of the contents of their files should be used to further the philosophy of the Act by facilitating rather than hindering the handling of requests for records.

R. Clark, The Attorney General's Memorandum of the Public Information Section of the Administrative Procedures Act, 20 Adm.L.Rev. 263, 292 (1965).

These standards leave no doubt that plaintiffs have complied with the statutory requirements. At most, their manner of requesting records made it more difficult for the Department to comply with the request. This is no reason to deny the request.

> The fact that to find the material would be a difficult or time-consuming task is of no importance . . .; an agency may make such charges for this work as permitted by the statute. To deny a citizen that access to agency records which Congress has specifically granted, because it would be difficult to find the records, would subvert Congressional intent to say the least.

Wellford v. Hardin, 315 F.Supp. 175, 177 (D.Md.1970), aff'd, 444 F.2d 21 (4th Cir. 1971).

It is therefore ordered that:

(1) Plaintiffs be permitted by defendants, their officers, agents, and employees to inspect and copy the following documents in accordance with 5 U.S.C. §

552(a)(3) upon the payment of such fees as are authorized by statute:

(a) A list of the names of all federal nonconstruction contractors assigned to the Department of the Treasury for compliance purposes under Executive Order No. 11246 that are subject to the requirements of 41 C.F.R. § 60–1.40 and that have an establishment located in Alameda County, California;

(b) All written affirmative action programs currently in effect that have been submitted to the Department by any of the contractors identified in (a);

(c) All EEO–1 reports and any other minority hiring reports containing statistics concerning the ethnic composition of a contractor's work force prepared since November, 1969, that have been submitted to the Department by any of the contractors identified in (a);

(d) All compliance review reports prepared since November, 1969, by compliance officers of the Department of the Treasury that concern any of the contractors identified in (a).

Except as otherwise stated herein, the documents described in subparagraphs (a) through (d) shall be made available to plaintiffs within 21 days of this order unless this court grants an extension of time upon defendants' request for an extension of specified duration and a showing of good cause therefor.

(2) If defendants believe any of the requested documents contain confidential information relating to plans for expansions, reductions, mergers, particular employees' career patterns, or similar matters, within the period specified in paragraph (1) defendants shall present the documents believed to contain such confidential information to the court, together with suggested deletions and an explanation concerning each proposed deletion. Immediately following the court's order allowing or disallowing the defendants to make the proposed deletions, these documents shall also be made available to plaintiffs for inspection and copying in accordance with paragraph (1).

(3) The court shall retain jurisdiction of this case pending disclosure by the defendants to the plaintiffs of all the documents as specified in the preceding paragraphs.