**WINE HOBBY, USA, INC.**

v.

**UNITED STATES BUREAU OF ALCO-
HOL, TOBACCO AND FIREARMS.**

Civ. A. No. 72–1629.

United States District Court,
E. D. Pennsylvania.

Sept 10, 1973.

James G. Watt, Allentown, Pa., for plaintiff.

Carmen Nasuti, Asst. U. S. Atty., Philadelphia, Pa., for defendant.

## MEMORANDUM AND ORDER

TROUTMAN, District Judge.

This is an action brought by the plaintiff under the Freedom of Information Act (the Act), 5 U.S.C. § 552, to obtain the names and addresses of all persons filing United States Bureau of Alcohol, Tobacco and Firearms Form 1541 (registration for production of wine for family use) in the Mid-Atlantic region of the United States.

Bureau of Alcohol, Tobacco and Firearms regulations 26 CFR §§ 240, 540–543, provide that the head of a family may, without payment of tax, produce 200 gallons of wine a year for the use of his family, and not for sale, if he regis-

ters to do so by filing Bureau of Alcohol, Tobacco and Firearms Form 1541. (Stip., Par. 3) After a determination is made that the person is qualified for an exemption, Form 1541 is stamped and one copy is returned to the registrant and the remaining copy placed in a file by the Bureau.

Wine Hobby, U.S.A., Inc. is a Pennsylvania corporation with its principal office in Allentown, Pennsylvania. It is engaged in the business of importing winemaking equipment and supplies from abroad as well as purchasing similar items in the United States and selling and distributing such items through retail stores, through franchises and by mail order to amateur winemakers. (Stip., Par. 2) In order to solicit business, Wine Hobby, U.S.A., Inc. mails out catalogs and notices of new items they offer for sale.

Wine Hobby, U.S.A., Inc. seeks the names and addresses of all persons filing Form 1541 in the Mid-Atlantic region of the Bureau of Alcohol, Tobacco, and Firearms in order that they may forward catalogs and other announcements regarding equipment and supplies that plaintiff has for sale. (Stip., Par. 4)

The Freedom of Information Act, 5 U.S.C. § 552, provides that each governmental agency shall make available to the public the information therein specified, including its organizational set-up, the methods by which it functions, its rules and procedure, its opinions, statements of policy, interpretations, manuals and instructions. Significantly, as regards the above information, not involved in this case, the act provides, *inter alia*, "to the extent required to prevent a clearly unwarranted invasion of personal privacy, an agency may delete identifying details * * *". 5 U.S.C. § 552(a)(2).

Section 552(b) provides:

"(b) This section does not apply to matters that are—

(1) specifically required by Executive order to be kept secret in the interest of the national defense or foreign policy;

(2) related solely to the internal personnel rules and practices of an agency;

(3) specifically exempted from disclosure by statute;

(4) trade secrets and commercial or financial information obtained from a person and privileged or confidential;

(5) inter-agency or intra-agency memorandums or letters which would not be available by law to a party other than an agency in litigation with the agency;

(6) personnel and medical files and similar files the disclosure of which would constitute a clearly unwarranted invasion of personal privacy;

(7) investigatory files compiled for law enforcement purposes except to the extent available by law to a party other than an agency;

(8) contained in or related to examination, operating, or condition reports prepared by, on behalf of, or for the use of, an agency responsible for the regulation or supervision of financial institutions; or

(9) geological and geophysical information and data, including maps, concerning wells."

The defendant contends that the names and addresses of those who have obtained a Form 1541 are protected by sub-paragraph (6), *supra*, as a "clearly unwarranted invasion of personal privacy".

At the very threshold, we note, as already indicated, that any such agency "may delete identifying details" under Section 552(a)(2) "to prevent a clearly unwarranted invasion of personal privacy". Here, however, it is "identifying" details, specifically names and addresses, which the plaintiff seeks. The defendant, therefore, understandably argues that the plaintiff is not entitled to the information sought and relies specifically upon sub-section (6), relating as it does to "invasion of personal privacy".

In Consumers Union of United States, Inc. v. Veterans Administration, 301 F. Supp. 796 (S.D.N.Y.1969), the Court delineated the purposes of the Act as follows:

"* * * The purpose of the Act, seen in the statutory language and the legislative history, was to reverse the self-protective attitude of the agencies under which they had found that the public interest required, for example, that the names of unsuccessful contract bidders be kept from the public. The Act made disclosure the general rule and permitted only information specifically exempted to be withheld; it required the agency to carry the burden of sustaining its decision to withhold information in a de novo equity proceeding in a district court. Disclosure is thus the guiding star for this court in construing the Act. * * *" 301 F.Supp. at 799, 800.

Interestingly, the Court further noted as follows:

"Even though the records sought are not exempt, the court is not bound under the Act to automatically order their disclosure. In exercising the equity jurisdiction conferred by the Act, it must, according to traditional equity principles, weigh the effects of disclosure and non-disclosure and determine the best course to follow at the present time. In an action under the Freedom of Information Act, which shifts the burden of proof to the defendant, the balance of the equities is presumptively on the side of disclosure. The rule that will be followed, therefore, is this: where agency records are not exempted from disclosure by the Freedom of Information Act, a court *must* order their disclosure unless the agency proves that disclosure will result in significantly greater harm than good. Because the Act was intended to benefit the public generally, it is primarily the effects on the public rather than on the person seeking the records that must be weighed." (Emphasis ours) 301 F. Supp. at 806.

Again referring to the broad purposes of the Act, the Court in Bristol-Myers Company v. Federal Trade Commission et al., 138 U.S.App.D.C. 22, 424 F.2d 935 (1970) said as follows:

"The legislative history establishes that the primary purpose of the Freedom of Information Act was to increase the citizen's access to government records. Before 1967, the Administrative Procedure Act contained a Public Information section 'full of loopholes which allow[ed] agencies to deny legitimate information to the public'. When Congress acted to close those loopholes, it clearly intended to avoid creating new ones. * * *"

The noble purpose of the Act was specifically alluded to in American Mail Line, Ltd. et al. v. J. W. Gulick et al., 133 U.S.App.D.C. 382, 411 F.2d 696 (1969), where the Court stated:

"The Freedom of Information Act was promulgated in 1966 (80 Stat. 250) with a stipulation that it would not take effect until July 4, 1967, (81 Stat. 54) and it is now codified in 5 U.S.C. § 522 (Supp. III. 1965–1967). An exploration of the legislative history behind this enactment reveals that the premier purpose of the Act was to elucidate the availability of Government records and actions to the American citizen. In addition, Congress sought to eliminate much of the vagueness of the old law (section three of the Administrative Procedure Act of 1946, 60 Stat. 238). The Senate Report characterized the purpose of the Act as follows (S.Rep.No.813 at 2–3):

"Knowledge will forever govern ignorance, and a people who mean to be their own governors, must arm themselves with the power knowledge gives. A popular government without popular information or the means of acquiring it, is but a prologue to a farce or a tragedy or perhaps both. With this noble purpose we wholeheartedly agree. * * *" (411 F.2d at 699.

More recently, in Environmental Protection Agency et al. v. Mink et al., 410 U.S. 73, 93 S.Ct. 827, 35 L.Ed.2d 119 (1973), Mr. Justice Douglas, dissenting, said as follows:

"* * * We should remember the words of Madison: 'A popular government without popular information or the means of acquiring it, is but a prologue to a farce or a tragedy or perhaps both. Knowledge will forever govern ignorance: And a people who mean to be their own Governors, must arm themselves with the power knowledge gives'." 410 U.S. at 110, 93 S. Ct. at 847.

In Soucie v. David, 145 U.S. App.D.C. 144, 448 F.2d 1067 (1971), the Court, in construing the Act, said as follows:

"* * * The Act rejects the usual principle of deference to administrative determinations by requiring a trial 'de novo' in the district court. By directing disclosure to *any person, the Act precludes consideration of the interest of the party seeking relief.* Most significantly, the Act expressly limits the grounds for non-disclosure to those *specified in the exemptions.* * * *" (Emphasis ours.)

Thus, we are precluded from considering the needs of the party seeking relief. The fact that plaintiff is motivated by personal economic gain in the promotion of its product is considered by the Court to be of no significance and we are precluded from its consideration.

Of equal significance and importance was the next succeeding comment of the Court as follows:

"* * * Through the general disclosure requirement and specific exemptions, *the Act thus strikes a balance among factors* which would ordinarily be deemed relevant to the exercise of equitable discretion, i.e., the public interest in freedom of information and countervailing public and private interests in secrecy. *Since judicial use of traditional equitable principles to prevent disclosure would*

*upset this legislative resolution of conflicting interests, we are persuaded that Congress did not intend to confer on district courts a general power to deny relief on equitable grounds apart from the exemptions in the Act itself.* * * *"* 448 F.2d at 1077. (Emphasis ours)

Here we are instructed that the Act itself strikes the balancing factors and that this Court is, therefore, precluded from exercising its historic equitable power.

In Getman et al. v. National Labor Relations Board, 146 U.S.App.D.C. 209, 450 F.2d 670 (1971) names and addresses of employees eligible to vote in certain elections before the National Labor Relations Board were sought by certain professors of labor law, ostensibly interested in studying the procedures of the Board with a view to the improvement thereof and, thus, an improvement in governmental operations. The Court stated:

"* * * We hold further that a District Court has no equitable jurisdiction to permit withholding of information which does not fall within one of the exemptions of the Act. * * *" 450 F.2d at 672.

Considering specifically Exemption (6) with which we are here concerned, the Court further stated:

"Although Exemption (6) differs from Exemptions (4) and (7) in that it covers information similar in some respects to the kind being sought in this case, we agree with the District Court that the Board has not met the burden of proof required to justify a refusal to disclose under this part of the Act. Exemption (6) applies to 'personnel and medical files and similar files the disclosure of which would constitute a clearly unwarranted invasion of personal privacy'. Assuming that the Excelsior lists may be characterized as 'personnel and medical files and similar files', it is still only a disclosure constituting a 'clearly unwarranted invasion of personal privacy'

that falls within the scope of Exemption (6). Exemption (6) requires a court reviewing the matter de novo to balance the right of privacy of affected individuals against the right of the public to be informed; and the statutory language 'clearly unwarranted' instructs the court to tilt the balance in favor of disclosure.

"In carrying out the balancing of interests required by Exemption (6), our first inquiry is whether disclosure of the names and addresses of employees constitutes an invasion of privacy and, if so, how serious an invasion. We find that, although a limited number of employees will suffer an invasion of privacy in losing their anonymity and in being asked over the telephone if they would be willing to be interviewed in connection with the voting study, the loss of privacy resulting from this particular disclosure should be characterized as relatively minor. * * * The giving of names and addresses is a very much lower degree of disclosure; in themselves a bare name and address give no information about an individual which is embarrassing. In the conduct of appellees' study, any disclosure of information more personal than a name and address is wholly consensual and within the control of the employee. * * * Thus assuming arguendo that the disclosure of Excelsior lists constitutes disclosure of a 'file' within the meaning of Exemption (6), and while recognizing that such disclosure does involve some invasion of privacy, we find that the invasion itself is to a very minimal degree.

"In determining whether this relatively minor invasion of privacy is 'clearly unwarranted', we must also weigh the public interest purpose of appellees' NLRB voting study, the quality of the study itself, and the possibility that appellees could pursue their study without the Excelsior lists. * * *

"* * * The public interest need for such an empirical investigation into the assumptions underlying the Board's regulation of campaign tactics has for some time been recognized by labor law scholars. This particular study has been reviewed and supported by virtually every major scholar in the labor law field. The record is also replete with testimonials from leading management and union representatives and Government officials. Appellees' research has also been approved by the prestigious National Science Foundation, which has awarded appellees the largest grant ever made available for law related research."

Thus, under Exemption (6), the Court indulged in a balance of equities, concluding that the invasion of privacy was minimal.

Turning them to the question whether the courts have equitable discretion to permit withholding of information which does *not* fall within one of the specific exemptions, the Court stated:

"Having found that nondisclosure of the Excelsior lists is not warranted under Exemption (4), (6) or (7), we must still resolve the *question whether the courts have equitable discretion to permit withholding of information which does not fall within one of the specific exemptions to the Act.* The District Court in this case held that, '[a]ssuming that [a District Court], in an action under the Freedom of Information Act, may deny disclosure on grounds other than those set out in the specific exemptions to the Act, the burden of justifying non-disclosure must still rest upon the agency. I find that the Board has not met that burden.' We do not need to reach the balancing issue decided by the District Court because we agree with the dicta of the panel in Soucie v. David, 145 U.S.App.D.C. 144, 448 F.2d 1067 (decided April 13, 1971), and with the Fourth Circuit's decision in Wellford v. Hardin, 444 F.2d 21 (1971), that a District Court has no equitable jurisdiction to deny disclosure on grounds other than those laid out under one of

the Act's enumerated exemptions." 450 F.2d at 677 and 678. (Emphasis ours)

In support of its conclusion, the Court stated:

"* * * The basic purpose of the amendment which has become popularly known as the Freedom of Information Act, was to guarantee public access to Government information by converting a 'withholding' statute to a 'disclosure' statute and by mandating full public access to Government information, subject to a limited number of clearly drawn exemptions.

"The question whether the courts retain equitable discretion under the Act is settled for us by the express language of the Act, aided by the gloss from the Senate report. Section 552(c) states:

'This section does not authorize withholding of information or limit the availability of records to the public, except as specifically stated in this section. * * *'" 450 F. 2d at 679.

▬ Thus, unless the information falls squarely within Exemption (6), we have no right to the exercise of discretion and no alternative but to grant the plaintiff's request. Access to material under the Freedom of Information Act is not limited to those persons with particular reason for seeking disclosure; instead material is available to "any person". Hawkes v. Internal Revenue Service, 467 F.2d 787 (6th Cir. 1972).

▬ The defendant relies, by analogy, upon N.A.A.C.P. v. Alabama, 357 U.S. 449, 78. S.Ct. 1163, 2 L.Ed.2d 1488 (1958) holding that the State of Alabama could not force the disclosure of the names and addresses of members of an organization associated together for the advancement of beliefs, ideals and ideas assured by the Due Process Clause of the Fourteenth Amendment. The decision was squarely predicated upon the possibility of economic reprisal, loss of employment, threat of physical coercion, and other manifestations of public hostility adversely affecting the ability of the association and its members to pursue their collective efforts. It clearly has no application here. Likewise see Griswold v. Connecticut, 381 U.S. 479, 85 S.Ct. 1678, 14 L.Ed.2d 510 (1965).

In Legal Aid Society of Alameda County et al. v. Shultz, 349 F.Supp. 771, (N.D.Cal.1972), the Court specifically directed the disclosure of "a list of the names of all federal nonconstruction contractors assigned to the Department of the Treasury for compliance purposes under Executive Order No. 11246 that are subject to the requirements of 41 C. F.R. § 60–1.40 and that have an establishment located in Alameda County, California". The Court noted its lack of equitable discretion:

"* * * it is now well settled that because of the specific command of § 552(c), discussed above, the courts have no discretion to refuse to order disclosure on equitable principles. See Getman v. NLRB, 146 U.S.App.D. C. 209, 450 F.2d 670, 677–680 (1971); Soucie v. David, 145 U.S.App.D.C. 144, 448 F.2d 1067, 1076–1077 (1971)." 349 F.Supp. at 776.

Thus, careful review of applicable authorities and precedents discloses that the names and addresses here sought are not subject to Exemption (6) as an invasion of privacy. This is not to suggest that we agree with the conclusion, under the facts here involved, or find that such result was in fact the congressional intent. Rather, we think Circuit Judge MacKinnon, in the concurring opinion in Getman v. National Labor Relations Board, *supra,* correctly stated as follows:

"The extremely broad sweep of the Freedom of Information Act, with its narrow exemptions, makes it *mandatory* in my opinion—if we are to follow the directions of Congress—to direct the National Labor Relations Board to furnish appellees with the names and addresses of employees as requested. * * *

"My principal concern is for the future. We are here following the dictates of Congress and are making information available for a use that may interfere with the proper functioning of government. This use may have its beneficial effects also, but before the good is harvested considerable turmoil and disruption may result. And this decision is only the beginning. *We may expect similar wholesale demands for lists of names and addresses from other persons, not for what they may disclose about the functioning of government, but for their collateral ability to aid the person requesting such information.*

\*　　\*　　\*　　\*　　\*　　\*

"*It seems to me that furnishing bare lists of names and addresses of various groups of persons in various Government files is not the sort of disclosure that Congress basically had in mind in enacting the Freedom of Information Act. But in my opinion, the Act as it presently exists practically requires the disclosure of such lists on demand. One need not elaborate on the various abuses that could result if lists of people as classified by the Government for particular purposes became available practically on demand in wholesale lots. If this situation is to be corrected, it will require an amendment to the Act.*" (Emphasis ours) 450 F.2d at 680, 681.

We agree with Judge MacKinnon. We suggest that the language used in Section (a)(2), namely,

"\*　\*　\* to the extent required to prevent a clearly unwarranted invasion of personal privacy, *an agency may delete identifying details* when it makes available or publishes an opinion, statement of policy, interpretation, or staff manual or instruction",

indicates a congressional intent to delete or eliminate precisely the "identifying details" here sought and it is unfortunate that such language was not included in sub-section (b) as regards exemptions. If such language indicates an intent by Congress to eliminate precisely what is occurring here, it is unfortunate that the courts have not, in recognition of Judge MacKinnon's prophetic language, given this Court the equitable discretion required to properly deal with the situation. It must come as a surprise to the head of a family, producing less than two hundred gallons of homemade wine per year for his own use, and procuring Form 1541 as he is legally obliged to do, to find that his name has become a part of a vast list of names released by the Government for purposes of commercial exploitation. We hasten to add that in this instance, as stated by reputable and dependable counsel for the plaintiff, there is no reason to suspect that the list will be improperly used or that the subject will receive anything more than an advertisement in which indeed he may have considerable personal interest and for which he may be grateful. That happy circumstance existing in this case, under the facts presented to us, does not eliminate the unhappy situation which may follow in the next instance when the Government is thus forced to disclose a name and address. In reaching our conclusion, we hope that the observations just made are the result of unwarranted and unjustified speculation. However, common sense compels us to the conclusion reached by Judge MacKinnon as regards the potential abuses that may result from this and like decisions.

We will grant the plaintiff's motion for summary judgment and deny the defendant's motion for summary judgment.