The **HARTFORD NATIONAL BANK & TRUST COMPANY,** Executor of the Will of Blanche L. Edgar, deceased, Plaintiff,

v.

**UNITED STATES of America,** Defendant.

Civ. A. No. 13344.

United States District Court, D. Connecticut.

April 1, 1971.

John J. McGarry, Robert W. Marrion, of McGarry, Prince, McGarry & Marrion, New London, Conn., for plaintiff.

Daniel J. Dinan, Dept. of Justice, Washington, D. C., F. Mac Buckley, Asst. U. S. Atty., Hartford, Conn., for defendant.

### RULING ON CROSS-MOTIONS FOR SUMMARY JUDGMENT

CLARIE, District Judge.

This action seeks the return of federal estate taxes previously paid under protest. The plaintiff executor contends that the testatrix created under the terms of her Will a charitable remainder interest eligible for a deduction under 26 U.S.C. § 2055. Cross-motions for summary judgment were filed and both parties agreed that there remained no disputed facts. The Court finds that the Will did not prescribe a "presently ascertainable" value of the corpus of the charitable remainder, which is a prerequisite for the allowance of such a deduction. Summary judgment is granted for the Government.

The stipulated facts disclose that on August 3, 1961, Blanche L. Edgar (the testatrix) executed her Last Will and Testament. Although a codicil was subsequently executed on April 19, 1963, the changes effected are not material to the legal issues in this action. While a resident of New London, Connecticut, the testatrix died on February 2, 1965, and her Will was probated there.

Article Fifth of her Will provided that the residual of her estate was to be given in trust to the plaintiff trust company for the accomplishment of specific purposes not relevant to the present suit. This Article then concluded:

"The balance of said income shall be paid to my said trustee in monthly

payments, in share and share alike, to Janet Clarke and her children, George Klinck Clarke, Candice Ann Clarke and Sandra Dennis Clarke, all of New London, Connecticut, for the terms of their natural lives, intending that the survivor shall have the benefit and use of income as was paid during the lives of said persons. In connection with the payments specified to be made to Janet Clarke and her said children, I authorize and empower my said trustee, solely and absolutely in its discretion, to make payment of any sum or sums from the corpus of said trust in addition to said payments from said income *as it feels necessary for the physical welfare of said Janet Clarke and her said children and the survivor of them."* (Emphasis added).

The clause then states that upon the death of the various life beneficiaries, the trustee was empowered "to continue to hold, manage and invest said trust funds as a permanent and perpetual trust" which was to make payments to certain charitable organizations.

On April 29, 1966, a federal estate tax return was filed by plaintiff executor with the District Director of Internal Revenue, Hartford, showing a federal estate tax liability of $162,088.91, which amount was paid at the time the return was filed. After an audit of the return by an official of the Internal Revenue Service, a supplemental tax assessment was made against the plaintiff totaling $19,716.50, plus interest, on the ground that there could be no charitable deduction for the value of the remainder of the trust established by Article Fifth of the testatrix's Will. This deficiency with interest in the amount of $1,215.40 was subsequently paid and this suit followed.

Section 2055 of the Code authorizes a charitable deduction from the gross estate for all bequests under:

"(a) (2) to or for the use of any corporation organized and operated exclusively for religious, charitable, scientific, literary, or educational purposes * * * no part of the net earnings of which inures to the benefit of any private stockholder or individual, and no substantial part of the activities of which is carrying on propaganda, or otherwise attempting, to influence legislation."

The Treasury Regulations issued pursuant to this section have prescribed rules covering the situation where a charitable remainder interest is subject to a power in the trustee to divert funds from corpus to a non-charitable beneficiary. One of the requirements is stated as follows:

Section 20.2055–2 Transfers not exclusively for charitable purposes.

"(a) *Remainders and similar interests.* If a trust is created or property is transferred for both a charitable and a private purpose, deduction may be taken of the value of the charitable beneficial interest only insofar as that interest is presently ascertainable, and hence severable from the noncharitable interest."

Another requirement is that the likelihood the charity will not take is "so remote as to be negligible." This question has not been raised as a basis for summary judgment by either party. The ultimate issue in the present suit is whether the discretion given by the testatrix to the trustee, to invade the corpus of the charitable trust "as it feels necessary for the physical welfare" of the income beneficiaries, is certain enough so that the charitable remainder may be considered presently ascertainable.

While the "presently ascertainable" test has previously caused much controversy (Cf. Magruder, C. J. concurring in Blodget v. Delaney, 201 F.2d 589 (1st Cir. 1953) ), the courts today uniformly agree on certain basic principles. These principles are derived from two significant Supreme Court cases: Ithaca Trust Co. v. United States, 279 U.S. 151, 49 S. Ct. 291, 73 L.Ed. 647 (1929) and Merchants Nat. Bk. v. Commissioner of In-

ternal Revenue, 320 U.S. 256, 64 S.Ct. 108, 88 L.Ed. 35 (1943).

In *Ithaca Trust* decedent had established a testamentary trust with a life estate in his wife, remainder to charity. The trustee was instructed to invade principal in favor of the wife in such amounts "that may be necessary to suitably maintain her in as much comfort as she now enjoys." The Court held that the provision for the maintenance of the wife did not make the gifts to charity presently incalculable so that the deduction could not be had.

> "The principal that could be used was only so much as might be necessary to continue the comfort then enjoyed. The standard was fixed in fact and capable of being stated in definite terms of money. It was not left to the widow's discretion. The income of the estate at the death of the testator, and even after debts and specific legacies had been paid, was more than sufficient to maintain the widow as required. There was no uncertainty appreciably greater than the general uncertainty that attends human affairs." (279 U.S. at 154, 49 S.Ct. at 291.)

Other courts have expanded upon "necessary to suitably maintain" to hold that like phrases importing need are sufficiently certain to allow the charitable deduction. In Lincoln Rochester Trust Co. v. McGowan, 217 F.2d 287 (2d Cir. 1954) the charitable deduction was approved where the trustee was given discretion to provide for the testator's wife (the life beneficiary) from the corpus of the trust in case of "unusual demands, emergencies * * * from sickness, accident or failure of investments." The court declared:

> "(T)he criterion employed is one of 'need' resulting from limited kinds of externally caused emergencies of such a nature as would diminish the widow's income or increase her expenses so that invasion of principal would be required to maintain her customary standard of living." (at 292).

*See also* Lincoln Rochester Trust Co. v. Commissioners of Internal Revenue, 181 F.2d 424 (2d Cir. 1950) and Hartford-Connecticut Trust Co. v. Eaton, 36 F.2d 710 (2d Cir. 1929).

*Merchants Bank, supra,* presents another principle needed to analyze the claims of the present plaintiff. In *Merchants Bank* decedent had established a testamentary trust consisting of the residue of his estate, with a life estate in his wife and remainder to charity. In that case the trustee was empowered to invade the corpus in its discretion for the "comfort, support, maintenance, and/or happiness of my said wife." The trustee was exhorted to "exercise its discretion with liberality to my said wife, and consider her welfare, comfort and happiness prior to claims of residuary beneficiaries under this trust." (320 U.S. at 257–258, 64 S.Ct. at 110.)

The Court disallowed the deduction, observing that the testator was "hedging" on his philanthropy to too great a degree. In sweeping language the Court declared:

> "For a deduction * * * to be allowed, Congress and the Treasury require that a highly reliable appraisal of the amount the charity will receive be available, and made, at the death of the testator. Rough guesses, approximations, or even the relatively accurate valuations on which the market place might be willing to act are not sufficient. * * * Only where the conditions on which the extent of invasion of the corpus depends are fixed by reference to some readily ascertainable and reliably predictable facts do the amount which will be diverted from the charity and the present value of the bequest become adequately measurable. And, in these cases, the taxpayer has the burden of establishing that the amounts which will either be spent by the private beneficiary or reach the charity are thus accurately calculable." (at 261, 64 S.Ct. at 111).

A similar decision was rendered in Henslee v. Union Planters Bank, 335 U.S.

595, 69 S.Ct. 290, 93 L.Ed. 259 (1949) where an invasion of corpus could be made at the annuitant's request for the pleasure, comfort and welfare of the annuitant. The Court held that the language used in the Will did not allow a reliable prediction of the amount of the invasion which would occur. *See, also* Commissioner of Internal Revenue v. Sternberger's Estate, 348 U.S. 187, 75 S.Ct. 229, 99 L.Ed. 246 (1955).

These principles have been thoroughly summarized in Salisbury v. United States, 377 F.2d 700 (2d Cir. 1967). The deduction is to be allowed where the invasion of the life tenant is "limited by an objective standard fixed by the terms of the will that is capable of being stated in terms of money." The deduction is to be disallowed where this measurable standard does not exist, however remote or tenuous the possibility of invasion might be. (at 703).

The test now set down in the cases depends upon the language of the bequest, wherein the trustee is granted the power of invasion over the corpus. The deduction is not exclusively contingent upon circumstances outside the language of the Will, such as the age of the income beneficiary, the customary habits of the beneficiary, or an assurance that the trustee will watch the corpus diligently in the discharge of his duties. *See,* Seubert v. Shaughnessy, 233 F.2d 134, at 137–138 (2d Cir. 1956).

The issue of whether the plaintiff's charitable remainder interest is "presently ascertainable" resolves itself into whether the phrase "as it (the trustee) feels necessary for the physical welfare (of the income beneficiaries)" provides the measurable standard set by the precedent discussed above.[1]

Both parties apparently agree that the adjective "physical" is not controlling in the present analysis. Plaintiff indicates that the word "physical" means that which pertains to the body as distin-

guished from the mind, soul or emotion. It refers to an objective real existence as distinguished from the imaginary or fictitious.

It is thus the word "welfare" that is the key to the allowance of the deduction and upon which plaintiff relies for the highly reliable standard mandated by authority. The word has been the subject of much confusion in the reported cases, some holding that the term presents a reliable standard of invasion and others denying such treatment when this term is used.

In Blodget v. Delaney, 201 F.2d 589 (1st Cir. 1953) the standard of invasion set by the testator was one of "comfort and welfare." Noting that a close case was presented, the court held that these terms fell under the ruling in *Ithaca Trust*. The word "comfort" clearly met the test as had been established. As to "welfare" the court stated:

"The word 'welfare' presents a more difficult problem. It is not only a word whose general content of meaning cannot be defined with precision, but it is also one which so far as we know has not been construed, even in a different context and with reference to other circumstances, by the highest court of the Commonwealth of Massachusetts. No doubt in some contexts and used under some circumstances it covers more elements of the subjective than the word 'comfort'". (at 593).

The court concluded by holding that under dicta from Massachusetts cases and as used in the context of the Will the word "welfare" was synonymous with "support." Utilizing New York law, Salisbury v. United States, *supra,* equates the terms "benefit" and "welfare" and holds both to meet the *Ithaca* fixed standard.

In comparison, in Sachter v. United States, 312 F.Supp. 671 (S.D.N.Y.1970) the trustees were given the power to invade the corpus of the trust to insure

---

1. The ages of the persons named in Article Fifth that have the benefit of any invasion by the trustee are: Janet Clarke (52), George K. Clarke (29), Candice Ann Clarke (26), and Sandra D. Clarke (25).

that the testatrix' retarded daughter was not lacking "in any essential or comfort for her well being and contentment." This was found not to be a fixed standard under the context of the Will, but to give discretionary power to the trustees to invade principal in any amount seen fit for the benefit of the daughter. (at 676). The question thus becomes one of context (or *ejusdem generis* as the government puts it) as well as one of the approach taken in local law to the interpretation of the word "welfare."

Here there is no reference to Connecticut cases interpreting the word "welfare" in the briefs of the parties or in any other Connecticut reference source. Moreover the word stands alone (except for the meaningless adjective "physical") without further caution or restraint. The dictionary definition of the word "welfare" refers to the state of "fairing or doing well; thriving or successful progress in life; a state characterized especially by good fortune, happiness, well-being, or prosperity." (Webster's Third New International Dictionary, Unabridged 2594 (1961)). It is this broad and subjective standard, which the testatrix employed in the drafting of this clause of her Will.

> "Of course, when general or subjective words stand alone * * * they are generally interpreted so as not to restrict the use of trust principal to maintenance of the beneficiary's standard of living." Salisbury v. United States, *supra*, 377 F.2d at 705.

Since the trustee has this unlimited discretion to provide for the physical welfare of the four income beneficiaries, singularly or simultaneously to all, and *to pay sums from principal, regardless* of the amount of income then being received, the language of the Will does not limit the invasion of the corpus to "some readily ascertainable and reliably predictable" amount as required by *Merchants Bank*. The Court finds that the charitable remainder interest created under Article Fifth of the Will is not "presently ascertainable" and the deduc-

tion must be denied. The plaintiff's motion for summary judgment is denied, and the defendant's motion for summary judgment is granted.

So ordered.