The **HARTFORD NATIONAL BANK AND TRUST COMPANY, Executor of the Will of Blanche L. Edgar, Deceased, Plaintiff-Appellant,**

v.

**UNITED STATES of America, Defendant-Appellee.**

**No. 740, Docket 71-1706.**

United States Court of Appeals, Second Circuit.

Argued June 28, 1972.

Decided Aug. 11, 1972.

Robert W. Marrion, New London, Conn. (John J. McGarry, New London, Conn., of counsel), for plaintiff-appellant.

William M. Brown, Atty., Tax Div., Dept. of Justice, Washington, D. C. (Scott P. Crampton, Asst. Atty. Gen., Meyer Rothwacks, Paul M. Ginsburg, Attys., Tax Div., Dept. of Justice, Washington, D. C., and Stewart H. Jones, U. S. Atty., Greenwich, Conn., of counsel), for defendant-appellee.

Before MOORE, SMITH and TIMBERS, Circuit Judges.

MOORE, Circuit Judge:

The Hartford National Bank and Trust Company (Bank), as executor of the will of Blanche L. Edgar, deceased, appeals from a judgment of the United States District Court for the District of Connecticut granting the government summary judgment on the Bank's claim for a refund of federal estate taxes.[1] The court below concluded that a split-interest trust created by the decedent's will does not define a standard governing the trustee's power of invasion that is "presently ascertainable, and hence severable from the noncharitable interest,"[2] within the meaning of the applicable regulations and case law. We disagree, reverse the judgment below, and remand for further proceedings to determine the value of the charitable deduction.

---

1. Hartford Nat'l Bank & Trust Co. v. United States, 327 F.Supp. 1138 (D. Conn.1971).

2. *Id.* at 1139, *quoting* Treas.Reg. § 20.2055-2(a) (1958).

## I.

The decedent died on February 2, 1965, in New London, Connecticut. Her will, executed on August 3, 1961, was probated in New London.[3] Article Fifth of her will provides that the residue of her estate is to be given to the Bank as trustee for specified purposes. After enumerating specific bequests to be made from the net yearly income of the trust, the Article directs the trustee to pay the balance of the income to one Janet Clarke and her three children, share and share alike, for the terms of their natural lives, with right of survivorship. In connection with these payments the trustee is empowered to invade the corpus of the trust "as it feels necessary for the physical welfare of said Janet Clarke and her said children and the survivor of them." Upon the death of the survivor of the beneficiaries, the Article directs the trustee to manage the trust funds as a permanent and perpetual trust the income from which is to be paid equally to the Lawrence and Memorial Hospitals and the Second Congregational Church of New London. The gross estate of the decedent as disclosed by the inventory filed in the appropriate Probate Court was $875,002.89, and for purposes of the federal estate tax, $656,989.63. On April 29, 1966, the Bank filed a federal estate tax return showing a federal estate tax liability of $162,088.91. In this return, the Bank had deducted an amount as a charitable deduction. After an audit, the District Director of the Internal Revenue Service informed the Bank of his intention to assess a deficiency in the amount of $19,716.50 plus interest because of his belief that the charitable deduction taken by the Bank was invalid. The Bank paid the deficiency plus interest ($1,215.40) on July 12, 1967, and thereafter filed a claim for a refund. The claim was not granted, and this suit followed.

In deciding for the government on cross-motions for summary judgment, Judge Clarie concluded (1) that the word "physical" in the instruction to the trustee on when to invade the corpus of the trust is not relevant in determining whether the charitable remainder interest is "presently ascertainable,"[4] and (2) that the word "welfare," thus left standing alone, is not sufficiently precise to qualify the remainder bequest for the charitable deduction.

## II.

Section 2055 of the Internal Revenue Code of 1954 permits a deduction in computing the value of a taxable estate for, *inter alia*, bequests made to charitable organizations. Before amendment by the Tax Reform Act of 1969,[5] the section provided that where the bequest was a remainder interest in trust properties, the corpus of which was subject to invasion for the benefit of noncharitable income beneficiaries, the bequest was deductible only if the amount of the bequest was "presently ascertainable, and hence severable from the noncharitable interest."[6] Determining what lan-

---

3. A codicil to her will was executed on April 19, 1963; it has no relevance to the issue on this appeal.

4. Both parties apparently agree that the adjective "physical" is not controlling in the present analysis.

  .      .      .      .      .

  [T]he word [welfare] stands alone (except for the meaningless adjective "physical") without further caution or restraint.

  Hartford Nat'l Bank & Trust Co. v. United States, 327 F.Supp. 1138, 1141, 1142 (D.Conn.1971). Appellant disputes the agreement imputed to it as to the

insignificance of the word physical. Brief for Appellant at 11.

5. Tax Reform Act of 1969, § 201(d) (1), 83 Stat. 560–61, amending Internal Revenue Code of 1954, § 2055(e).

6. Treas.Reg. § 20.2055–2(a) (1958). *See generally* Taggart, Charitable Deductions for Transfers of Remainder Interests Subject to Invasion, 21 Tax.L.Rev. 535 (1966).

  Charitable gifts subject to a condition (*e. g.*, the gift to charity is conditioned upon failure of lawful issue in the income beneficiary) are deductible under section 2055 only if "the possibility that the

guage created a presently ascertainable interest and what language did not proved a most difficult task. Often the amount of the deduction taken bore only a rough correlation to the amount of the bequest actually made to the charity.[7]

■ The central inquiry in determining whether the language of split-interest trusts creates a presently ascertainable charitable remainder interest is whether the principal can be invaded only for purposes the determinants of which are known or known to be remote. Where invasion of the trust principal is permitted as "may be necessary to suitably maintain [the income beneficiary] in as much comfort as she now enjoys"[8] the charitable remainder interest is con-

sidered to be presently ascertainable because under these instructions the

> principal that could be used was only so much as might be necessary to continue the comfort then enjoyed. The standard was fixed in fact and capable of being stated in definite terms of money. It was not left to the widow's discretion, . . . . There was no uncertainty appreciably greater than the general uncertainty that attends human affairs.[9]

Safely falling within the rubric of "presently ascertainable" are also split-interest trusts the corpus of which can only be invaded for the "comfort and convenience" or "convenience" or "maintenance" or "support" of the income beneficiary or to maintain him in his "station in life."[10] So too where the

charitable transfer will not become effective is so remote as to be negligible." Treas.Reg. § 20.2055-2(b) (1958). While there is weighty authority for the view that sections 20.2055-2(a) ("presently ascertainable") and 20.2055-2(b) ("so remote as to be negligible") deal with mutually exclusive subjects, Commissioner of Internal Revenue v. Sternberger's Estate, 348 U.S. 187, 194, 75 S.Ct. 229, 99 L.Ed. 246 (1955), both remainders (20.2055-2(a)) and transfers subject to a condition or power (20.2055-2(b)) are often analyzed under both standards. Taggart, *supra*, 21 Tax.L. Rev. at 573-79.

7. H.R.Rep.No.413, 91st Cong., 1st Sess., pt. 1, at 58-60 (1969), 1969-3 Cum.Bull. 200, 237-38; S.Rep.No.552, 91st Cong., 1st Sess. 86-90 (1969), 1969-3 Cum.Bull. 423, 479-82.

The Tax Reform Act of 1969 attempts to eliminate this problem by permitting deductions for charitable remainder interests only if the trust is a charitable remainder annuity trust (under which the income beneficiary receives a stated dollar amount annually), a charitable remainder unitrust (under which the income beneficiary receives an annual payment based on a fixed percentage of the net fair market value of the trust assets), or a pooled income fund (under which the income beneficiary receives a specified share of trust income from property transferred to a fund established by a public charity). Tax Reform Act of 1969, § 201(d) (1), 83 Stat. 560-61, amending, Internal Revenue Code of

1954, § 2055(e). *See id.* § 201(e) (1), 201(b), 83 Stat. 562-64, 558-60, *adding* Internal Revenue Code of 1954, §§ 664, 642(c) (5). *See generally* Riband, Gifts in Trust of Income and Remainder Interests to Charity, N.Y.U. 30th Inst. on Fed.Tax. 87 (1972); Garibaldi, Some Final Problems for the Charitable Taxpayer: Gift Annuities; Pooled Income Funds; Split Interest Trusts; Valuation of Charitable Gift, *id.* at 117, 128-39.

The reforms generally do not apply to trusts established by wills executed before October 9, 1969, from a decedent dying before December 31, 1969. Tax Reform Act of 1969, § 201(g) (4), 83 Stat. 565, Internal Revenue Code of 1954, § 170 note.

8. Ithaca Trust Co. v. United States, 279 U.S. 151, 154, 49 S.Ct. 291, 73 L.Ed. 647 (1929).

9. *Id.*

10. Shafer v. United States, 452 F.2d 666 (7th Cir. 1971) (*per curiam*) (*dictum*) ("necessary for the care, maintenance and support"); Salisbury v. United States, 377 F.2d 700 (2d Cir. 1967) ("advisable . . . for his maintenance, support and medical expenses . . . support, care and benefit [while the beneficiary is incapacitated]"); Union Trust Co. v. Tomlinson, 355 F.2d 40 (5th Cir. 1966) (*dictum*) ("[t]o enable her to maintain the standard of living to which she was accustomed at the time of my death . . . well-being and comfort"); Estate of Zentmayer v. Commissioner of

trust corpus can be invaded only for demands arising from emergency, sickness, or accident, the courts have concluded under the lead of *Ithaca* that the charitable remainder interest is "presently ascertainable." [11] These courts would undoubtedly agree with this court's conclusion in *Lincoln Rochester* that

> . . . it was the purpose of the testator herein merely to insure that his wife would continue to enjoy her accustomed standard of living appears evident from the clear effort demonstrated in the will to disabuse anyone of the notion that the widow's mere whims would suffice to require an invasion of principal.

Patently subjective criteria such as "happiness" and "pleasure," which would render the standard too indefinite, . . . are noticeably absent here. . . . Instead, the criterion employed is one of "need" resulting from limited kinds of externally caused emergencies of such a nature as would diminish the widow's income or increase her expenses so that invasion of principal would be required to maintain her customary standard of living.[12]

On the other hand, where the trustee is empowered to invade the trust corpus for the "happiness" or "contentment" of the income beneficiary, then the charitable remainder interest is perceived as not presently ascertainable.[13] Such

---

Internal Revenue, 336 F.2d 488 (3d Cir. 1964) (*dictum*) ("support, maintenance, welfare and comfort") (doubts expressed about "comfort," *id.* at 490); State Street Bank and Trust Co. v. United States, 313 F.2d 29 (1st Cir. 1963) (*dictum*) ("comfortable support and maintenance"); Seubert v. Shaughnessy, 233 F.2d 134 (2d Cir. 1956) (*dictum*) ("comfort and convenience"); Blodget v. Delaney, 201 F.2d 589 (1st Cir. 1953) ("comfort and welfare," heavy reliance on Massachusetts law); Jennings v. Smith, 161 F.2d 74 (2d Cir. 1947) ("reasonably necessary to enable beneficiary . . . to maintain himself and his family, if any, in comfort and in accordance with the station in life to which he belongs"); Hartford-Connecticut Trust Co. v. Eaton, 36 F.2d 710 (2d Cir. 1929) ("comfortable maintenance and support," heavy reliance on Connecticut law).

*See* Rev.Rul. 70–450, 1970–2 Cum.Bull. 195: "A power to invade corpus for comfortable support and maintenance, including expenses of illness, hospitalization, or other medical care, constitutes an ascertainable standard." *See also* 4 J. Mertens, Federal Gift and Estate Taxation § 28.38 (1959, Supp.1972).

11. Nardi v. United States, 385 F.2d 343 (7th Cir. 1967) ("accident, sickness, or other emergency or unusual condition of any kind"); Lincoln Rochester Trust Co. v. McGowan, 217 F.2d 287 (2d Cir. 1954) ("any unusual demands, emergencies, requirements or expenses for her personal needs that may arise from time to time . . . . . [T]his clause is intended to provide for emergencies arising from sickness, accident or failure of invest-

ments"); Berry v. Kuhl, 174 F.2d 565 (7th Cir. 1949) ("accident, illness or other cause [for the purpose of] treatment, support or maintenance"); Commissioner of Internal Revenue v. Wells Fargo Bank & Union Trust Co., 145 F.2d 130 (9th Cir. 1944) ("on account of any sickness, accident, want or other ,emergency").

12. Lincoln Rochester Trust Co. v. McGowan, 217 F.2d 287, 292 (2d Cir. 1954).

13. Henslee v. Union Planters Nat'l Bank & Trust Co., 335 U.S. 595, 69 S.Ct. 290, 93 L.Ed. 259 (1949) (*per curiam*) ("pleasure, comfort and welfare . . . The first object to be accomplished in the administration . . . of . . . this trust is to take care of and provide for my mother in such manner as she may desire"); Merchants Nat'l Bank v. Commissioner of Internal Revenue, 320 U.S. 256, 64 S.Ct. 108, 88 L.Ed. 35 (1943) ("comfort, support, maintenance, and/or happiness . . . [Trustee directed to] exercise its discretion with liberality"); Shafer v. United States, 452 F.2d 666 (7th Cir. 1971) (*per curiam*) ("every necessity, comfort and convenience . . . shown every kindness and consideration"); United States v. Commercial Nat'l Bank, 404 F.2d 927 (10th Cir.), cert. denied, 393 U.S. 1000, 89 S.Ct. 487, 21 L.Ed.2d 465 (1968) ("comfort, welfare, contentment and happiness"); Union Trust Co. v. Tomlinson, 355 F.2d 40 (5th Cir. 1966) (trustee directed to "give sympathetic consideration to any requests"); Estate of Zentmayer v. Commissioner of Internal Revenue, 336 F.2d 488 (3d Cir. 1964) ("any other [than support, maintenance, or wel-

words, it is believed, permit too much speculation and are too subjective to permit the value of the charitable remainder to be ascertained with any degree of accuracy.

We conclude that the power of invasion granted to the trustee by the testatrix in this case is sufficiently objective under current doctrine to permit the charitable remainder interest to be presently ascertained. While the word "welfare" does refer to an individual's well-being not only in terms of his health but also in terms of his happiness,[14] we cannot agree with the court below that the modifying adjective "physical" should be disregarded in construing the limitation on the trustee's power of invasion.[15] The word's natural meaning limits the trustee to invading the trust corpus only for the material, as opposed to the mental or spiritual, well-being of the income beneficiaries.[16] Thus we have no difficulty in concluding as did the courts in *Ithaca* and its progeny that the testatrix has manifested an intent by her will to insure that the income beneficiaries continue to enjoy their accustomed standard of living free from the vicissitudes of sickness, accident, or other foreseeable but unexpected emergencies.

Given that the split-interest trust created by the testatrix' will does create a presently ascertainable charitable remainder interest, it now becomes necessary to consider all extrinsic factors to determine the value of this interest.[17] The testatrix was obviously a person of substantial means. The income from her estate might well be sufficient to support Janet Clarke and her children for their lives, providing them with whatever their "physical welfare" requires—without need for any invasion of principal. However, the question of the pattern and style of living of the Clarke family is one of fact. Only upon such facts can a reasonable determination of their prospective physical welfare be made. Obviously there is no indication that the testatrix intended this life style to change as a result of her largesse. In fact, her will directs that,

fare] purpose which my trustees shall deem expedient, necessary or desirable") ; State Street Bank and Trust Co. v. United States, 313 F.2d 29 (1st Cir. 1963) ("for any other [than comfortable support and maintenance] reasonable requirement") ; Seubert v. Shaughnessy, 233 F.2d 134 (2d Cir. 1956) ("any purpose which may add to her comfort or convenience"). See 4 J. Mertens, *supra* note 10, § 28.38. *But see* United States v. Powell, 307 F.2d 821 (10th Cir. 1962) (finding a presently ascertainable charitable remainder where corpus could be invaded "for the maintenance, welfare, comfort or happiness of [the income beneficiary]"), *questioned in* State Street Bank and Trust Co., *supra*, at 30, n. 3.

14. Welfare: "1. The state or condition of doing or being well; good fortune, happiness, or well-being (of a person, community, or thing) ; thriving or successful progress in life, prosperity." Oxford English Dictionary (Compact ed. 1971) ; "1. the state or condition with regard to good fortune, health, happiness, prosperity, etc. . . . . " The Random House Dictionary of the English Language (1966) ; "1b the state or condi-tion (as of a person or enterprise) in regard to well-being; esp: one's condition in regard to health, happiness or prosperity . . . . " Webster's Third New International Dictionary (1963).

15. *See* Travelers Bank & Trust Co. v. Birge, 136 Conn. 21, 24, 68 A.2d 138, 140 (1949) : "We cannot free the word welfare from its context [in construing the testamentary trust of the testatrix]."

16. Physical: "1. Of or pertaining to material nature, or to the phenomenal universe perceived by the senses ; pertaining to or connected with matter ; material ; opposed to *psychical*, mental, spiritual." Oxford English Dictionary (Compact ed. 1971) : "2. of or pertaining to that which is material : . . . Ant.[onym] 1. spiritual." The Random House Dictionary of the English Language (1966) ; "2b of or relating to natural or material things as opposed to things mental, moral, spiritual, or imaginary . . . . " Webster's Third New International Dictionary (1963).

17. Salisbury v. United States, 377 F.2d 700, 708 (2d Cir. 1967).

except for this particular life interest, the income from her estate, in such perpetuity as may exist, be given to the hospital and the church.

We thus remand for further proceedings devoted to this issue.