**TAX ANALYSTS AND ADVOCATES**
and Thomas F. Field

v.

**INTERNAL REVENUE SERVICE et al.**

Civ. A. No. 841–72.

United States District Court,
District of Columbia.

June 6, 1973.

1300

William A. Dobrovir, Thomas F. Field, Washington, D. C., for plaintiffs.

Charles Stratton, Tax Div., Dept. of Justice, Washington, D. C., for defendants.

## OPINION

AUBREY E. ROBINSON, Jr., District Judge.

This is an action under the Freedom of Information Act, 5 U.S.C. § 552, presently before the Court on cross-motions for Summary Judgment. Plaintiffs seek to compel public disclosure by the Internal Revenue Service (IRS) of certain letter rulings, technical advice memoranda, and communications and indices relating thereto. Specifically, Plaintiffs seek to inspect and copy unpublished letter rulings, issued to producers of minerals other than oil and gas between July 26, 1968, and October 1, 1971, in which determinations were made of the processes to be treated as "mining" under Section 613(c) of the Internal Revenue Code, 26 U.S.C. § 613(c), when computing gross income from property for percentage depletion purposes. Plaintiffs also seek those portions of technical advice memoranda on this subject issued to taxpayers during the same period and so much of the IRS letter ruling index system as is needed to ascertain whether additional unpublished rulings in point exist.[1] Lastly, Plaintiffs seek

1. Plaintiffs' Motion for Summary Judgment speaks in broad terms of "Defendants' files," apparently meaning *all* of Defendants' files of letter rulings and technical advice memoranda. Yet the Complaint in this case was limited, seeking

disclosure of all communications to and from the IRS with regard to said rulings and memoranda from outside the Executive Branch of the United States Government. There is no dispute that Plaintiffs request for the records complied with applicable regulations [2] and that Plaintiffs have exhausted their administrative remedies. The parties have engaged in extensive discovery and there is now no genuine dispute as to any material issue of fact.

■ Under the Freedom of Information Act the burden is on the agency to sustain its claim that disclosure is not required.[3] Defendants' legal contentions are, first, that the Freedom of Information Act does not apply to letter rulings or technical advice memoranda and, secondly, that even if the Act applies, specific exemptions preclude disclosure of the materials here sought.

■ A letter ruling is a written statement issued to a taxpayer by the Office of Assistant Commissioner (Technical) in which interpretations of the tax laws are made and applied to a specific set of facts.[4] The function of a letter ruling, usually sought by the taxpayer in advance of contemplated transaction, is to advise the taxpayer regarding the tax treatment that he can expect from IRS in the circumstances specified in the ruling. The letter rulings are not publicly disclosed by the IRS and it is clearly specified that no taxpayer is entitled to rely upon an unpublished private ruling not issued specifically to him.[5] The taxpayer who does receive such a ruling is advised to file it along with his tax return.[6]

■ A technical device memoranda (T.A. memo) is comparable to a letter ruling, except that it is not issued directly to a taxpayer, but to a District Director of the IRS in response to the director's request for instructions as to the treatment of a specific set of facts relating to a named taxpayer.[7] The director's question may relate to audit examination of a taxpayer's return or consideration of a taxpayer's claim for refund or credit.[8] The substantive portion of the memorandum if given to the taxpayer.[9]

All letter rulings and technical advice memoranda are divided into two categories by the IRS for filing purposes. Many rulings and memos are considered of no significant "reference" value. These are placed in a historical file, alphabetically by taxpayer's name, and maintained for a period of four years. No separate index is prepared for mate-

only such items as they related to determinations under Section 613(c) of the Internal Revenue Code of 1954, 26 U.S.C. § 613(c), for the period July 26, 1968 to October 1, 1971. Accordingly, relief must be thus limited in this case. It is only as to those items originally named in the Amended Complaint herein that the record indicates that Plaintiffs' request for access was denied by the agency.

2. 26 C.F.R. § 601.701 et seq.

3. 5 U.S.C. § 552(a)(3), Environmental Protection Agency v. Mink, 410 U.S. 73 at 78, 93 S.Ct. 827 at 830, 35 L.Ed.2d 119, 1973.

4. 26 C.F.R. § 601.201(a)(2); Defendants' Statement of Material Facts, ¶ 7. Cf. Rev.Proc. 72-3, I.R.B. 1972-1, 9, Section 2.02. Letter rulings are issued only by the National Office of the IRS, which

issues approximately 30,000 such rulings each year.

5. Defendants' Statement of Material Facts ¶9, ¶12. Cf. Rev.Proc. 72-3, I.R.B. 1972-1, 9, Section 13.01.

6. Defendants' Statement of Material Facts, ¶10. Cf. Rev.Proc. 72-3, I.R.B. 1972-1, 9, Section 6.14.

7. 26 C.F.R. § 601.105(b)(5), et seq., Rev. Proc. 69-2, 1969-1 C.B. 386, superseded by Rev.Proc. 72-2, 1972-1, I.R.B. ¶5. Points and Authorities in Support of Defendants' Motion for Summary Judgment (hereafter Defendants' Brief) at 7. See especially 26 C.F.R. § 601.105(b)(5)(vii).

8. Id.

9. Id., especially 26 C.F.R. § 601.105(b)(5)(iv)(e).

rials in the historical file.[10]   The other letter rulings and t.a. memos are deemed to have a continuing "reference" value for internal IRS purposes, and these are placed in the IRS' permanent reference file, along with Court decisions, published Revenue Rulings,[11] and other materials deemed to have a continuing reference value.   The reference file is organized by code section and an "index-digest" card file is maintained, giving citations to the main "reference" file and usually summarizing the contents of the reference file.[12]

Defendants have indicated that there are two unpublished letter rulings, eight technical advice memoranda and six index-digest cards within the category of information sought by Plaintiffs.[13]

■   The communications in question, relating to letter rulings and t.a. memos, consist of communications to and from the taxpayer or his representative.[14]

Letter rulings and t.a. memos are not to be confused with Revenue Rulings which are formal, published interpretations of the tax laws by the IRS,[15] nor with Income Tax Regulations.[16]

## I

A.   Section (a)(2)(B) of the Freedom of Information Act, 5 U.S.C. § 552(a)(2)(B),[17] expressly requires that all Federal agencies shall make available to the public "interpretations" adopted by the agency.   Plaintiffs contend that letter rulings and technical advice memoranda (hereafter collectively referred to as letter rulings) are "interpretations . . . adopted by the agency" and therefore expressly required to be disclosed.   As to such interpretations § 552(a)(2) further requires that a public and current index be maintained by the agency listing all interpretations adopted after July 4, 1967.[18]   Defendants

---

10. Defendants' Brief at 8.   Defendants' Points and Authorities in Opposition to Plaintiffs' Motion for Summary Judgment, March 12, 1973 (hereafter Defendants' Opposition) at 4.

11. Defendants' Brief at 7.

12. Id.

13. Defendants' Opposition at 1–2.

14. Defendants' Brief at 8.   Plaintiffs initially sought all communications relating to the letter rulings and t.a. memos in question, specifically including communications to or from members of Congress and their staffs.   Defendants' have indicated that the only communications in existence are those to or from the taxpayer.

15. Defendants' Statement of Material Facts, ¶8.   Cf. Rev.Proc. 72–3 I.R.B. 1972–1, 9, Section 2.06.   Revenue Rulings are published in the Internal Revenue Bulletin for the information and guidance of the taxpayer, the I.R.S. and the general public.   Id. Revenue Rulings are issued only by the National Office of the IRS, which issues approximately 650 such rulings each year.   Defendants' Statement of Material Facts ¶8, ¶13.   Revenue Rulings, like letter rulings, are narrowly based in that they are usually premised on a given fact situation.   In this way Revenue Rulings differ from Income Tax Regula-

tions, which are also formally published but are of more general applicability.

16. As to IRS rules, regulations, decisions and procedure generally, see 26 C.F.R. § 601.601 (Rules and Regulations) 26 C.F.R. § 601.201 (Rulings and Determinations Letters) ; 26 C.F.R. § 601.105(b) (5) (i–vii) (Technical Advice Memoranda) ; Goodrich, Redman and Quiggle *Procedure Before the Internal Revenue Service*, American Law Institute (Philadelphia, 1965) ; Rogovin, *The Four R's: Regulations, Rulings, Reliance and Retroactivity*, 43 Taxes 756 (1965).

17. 5 U.S.C. § 552(a)(2)(1967) :
(2) Each agency, in accordance with published rules, shall make available for public inspection and copying—
(A)  .  .  .
(B) those statements of policy and interpretations which have been adopted by the agency and are not published in the Federal Register ;  .  .  .

18. 5 U.S.C. § 552(a)(2)(1967) :
Each agency also shall maintain and make available for public inspection and copying a current index providing identifying information for the public as to any matter issued, adopted, or promulgated after July 4, 1967, and required by this paragraph to be made available or published.

agree that a letter ruling in fact "interprets and applies the tax laws to a specific set of facts."[19] Despite this agreement the IRS contends that a letter ruling is not an interpretation adopted by the agency within the meaning of the statute. The IRS contends that "interpretation . . . adopted by the agency" means "precedent" and that since prior letter rulings are not cited or relied upon in the preparation of new agency determinations they are not "precedents."

■ The Court must first look to the language of the statute itself to resolve the controversy, for if the plain meaning of the statutory language is clear resort to secondary sources such as legislative history is inappropriate.[20] In the present case the Court finds the statute clear and controlling. Policy and interpretations adopted by the agency are to be disclosed. There is no basis in the statutory language to support Defendants' contention that this means only interpretations which will be cited and relied upon by the agency in the future. The statutory language is not so limited. All interpretations are to be disclosed. The Court finds no ambiguity in the words "adopted by the agency." The ordinary meaning of those words reaches any interpretation issued by the agency or its delegates acting within the scope of their authority. The Supreme Court has said specifically of the IRS' private letter rulings that "such rulings do reveal the interpretation put upon the statute by the agency charged with the responsibility of administering the revenue laws."[21]

■ The fact that an interpretation has been once adopted by the agency does not necessarily mean that it thereby becomes binding "precedent." As an interpretation, it is entitled only to such future weight or authority as its rationale will bear, both within and without the agency.[22] The agency's view might change quickly, in which case it would be free to revoke or disown the interpretation.[23] It matters not that the interpretation is never again cited or relied upon by the agency or anyone else, for this cannot obliterate the fact that the interpretation was once adopted by the agency and thereby came within the express terms of the Freedom of Information Act.

■ This approach is supported by the structure of the statute. § 552(a)(1)(D) requires publication in the Federal Register of all "statements of *general* policy or interpretations of *general applicability* formulated and adopted by the agency," while § 552(a)(2)(B) requires that the agency make available for public inspection and copying "those statements of policy and interpretations which have been adopted by the agency and are not published in the Federal Register." Read together these provisions can only mean that interpretations of general applicability are to be published in the Federal Register while all other interpretations adopted by an agency, i. e. those *not* of general

---

19. Defendants Statement of Material Facts ¶7,; 26 C.F.R. § 601.201(a)(2).

20. Ex Parte Collett, 337 U.S. 55, 61, 69 S. Ct. 944, 93 L.Ed. 1207 (1949); United States v. Oregon, 366 U.S. 643, 648, 81 S.Ct. 1278, 6 L.Ed.2d 575 (1961).

21. Hanover Bank v. Commissioner, 369 U. S. 672, 686, 82 S.Ct. 1080, 1088, 8 L.Ed. 2d 187 (1962). See K. Davis, Administrative Law Treatise (1970 Supp.) § 3A.9.

22. Gibson Wine Co. v. Snyder, 90 U.S.App. D.C. 135, 194 F.2d 329 (1952), American President Lines, Ltd. v. Federal Maritime Commission, 114 U.S.App.D.C. 418, 316

F.2d 419 (1963). See generally, K. Davis, Administrative Law Treatise (1958) §§ 5.03-.06; (1970 Supp.) §§ 5.01-.06.

23. Such a course on the part of the agency, however, might be raised as evidence of arbitrariness or inconsistency in any subsequent challenge to the agency's latest interpretation. This is undoubtedly one of the fears lurking in the background of the agency's position in this case. Yet the ideal is not to conceal arbitrariness and inconsistency but to eliminate it. Such elimination is best served by disclosure and that is precisely the purpose of the Freedom of Information Act.

applicability, are to be made available to the public, albeit they need not be published. Thus, even those interpretations of very unique applicability must be made available under the Act.[24]

Defendants rely for their interpretation of the statute equating "interpretation" with "precedent" upon language in the House Report on the Freedom of Information Act:

> An agency may not be required to make available for public inspection and copying any advisory interpretation on a specific set of facts which is requested by and addressed to a particular person, provided that such interpretation is not cited or relied upon as a precedent in the disposition of other cases.

■ H.Rep.No.1497, 89th Cong., 2d Sess. (1966) at 7. This language would indeed seem to support Defendants position and it gives the Court some difficulty. Yet the House Report also states that "(t)he public has a need to know, for example, the details of an agency opinion on statement of policy on an income tax matter, . . ." H.Rep. at 8. This Court finds these statements somewhat contradictory.[25] When legislative history is contradictory or ambiguous it should not be allowed to outweigh the statutory language.[26] Further, the House Report is not the prime authority for interpretation of the Freedom of Information Act. The House Report "is characteristically broader and goes beyond the express terms of the statute . . . The Senate report is to be preferred over the House report as a reliable indication of legislative intent . . . ." Getman v. N. L. R. B., 146 U.S.App.D.C. 209, 450 F.2d 670, 673 n. 8 (1971).[27] The Senate Report follows the express language of the statute with little elaboration.[28] Defendants contend that the above quoted language in *Getman* has been overruled because the Supreme Court cited the House Report in Environmental Protection Agency v. Mink, 410 U.S. 73 at 79, 93 S.Ct. 827 at 832, 35 L.Ed.2d 119 (1973). The proposition for which the Supreme Court cited the House Report in *Mink*, however, was one on which the House Report was not at variance with the Senate Report nor with the plain meaning of the statute.[29] It is only where there is ambiguity or conflict between the two reports or between a Report and the statute that it becomes necessary to accept one over the other.[30] That situation was not before the Supreme Court in *Mink*.

■ The language and policy of the Freedom of Information Act require that the Court be hospitable to disclosure and that exemptions from the Acts' provisions be narrowly construed.[31] The

24. See K. Davis, Administrative Law Treatise (1970 Supp.) § 3A.9 at 130.

25. Id. at 131.

26. N.L.R.B. v. Plasterers' Union Local No. 79, 404 U.S. 116, 129, 92 S.Ct. 360, 30 L.Ed.2d 312 (1971); United States v. Dickerson, 310 U.S. 554, 562, 60 S.Ct. 1034, 84 L.Ed. 1356 (1940).

27. See K. Davis, Administrative Law Treatise, (1970 Supp.) §§ 3A.2, 3A.9; Hawkes v. I.R.S., 467 F.2d 787, 794, 797 (6th Cir. 1972); Stokes v. Hodgson, 347 F.Supp. 1371, 1374 (N.D.Ga. 1972), aff'd sub nom. Stokes v. Brennan, 476 F.2d 699 (5th Cir. 1973).

28. Senate Report No. 813, Cong. 1st Sess. (1965) at 6–7:
. . . agencies must make available . . . those statements of policy and

interpretations which have been adopted by the agency and are not required to be published in the Federal Register . . . .

29. The Supreme Court in *Mink* expressly found that "the language of the Act itself is sufficiently clear in this respect" (at 82, 93 S.Ct. at 833) and merely cited the House Report for emphasis.

30. See Frankel v. S. E. C., 460 F.2d 813, 816 n. 5 (2d Cir. 1972).

31. Weisberg v. Department of Justice, No. 71–1026 (D.C.Cir. Feb. 28, 1973) Slip Op. at 8; Fisher v. Renegotiation Board, 473 F.2d 109, 111 (D.C.Cir. 1972); Getman v. N. L. R. B., 146 U.S.App.D.C. 209, 450 F.2d 670, 672 (D.C.Cir. 1971); Soucie v. David, 145 U.S.App.D.C. 144, 448 F.2d 1067, 1080 (D.C.Cir. 1971); Bristol-Myers Company v. F. T. C., 138

statutory language must be given primacy over the House Report.[32] For these reasons the Court rejects Defendants' position and reliance on the House Report.

■■■ B. Accepting Defendants' reliance on the House Report for the moment, the Court finds that Plaintiffs would still prevail. There is no dispute that letter rulings are not cited by the IRS, in later rulings or elsewhere, as precedent. It is clear to the Court, however, that many of the rulings are in fact often "relied upon" by the agency as precedent and therefore come within the class of documents for which even the House Report requires disclosure. Defendants would resist that conclusion, but the undisputed facts on which it is based will be set forth. For the most part they are drawn from Defendants' description of the role of the letter rulings in IRS operations.

Most letter rulings and technical advice memoranda are maintained in a routine alphabetical file by (taxpayer's name) disposed of after four years.[33] Certain other letter rulings and technical advice memoranda are placed into another file that is arranged by Internal Revenue Code sections and is called the "reference" file.[34] Prior to 1967 that file was called the "precedent" file.[35]

A letter ruling or technical advice memorandum is placed in the 'reference' file rather than the 'routine' file if it . . . has future significant reference value because of the issues involved.[36]

Classification as 'reference' enables Internal Revenue Service personnel to refer to such rulings or technical advice memorandums in the future to find underlying authorities and reasoning when they are preparing an unpublished letter ruling or even a Revenue ruling to be published with a similar issue.[37]

If the underlying authorities have not changed and the facts are the same or reasonably similar, a new ruling is bound to hold the same as the old 'reference' ruling; common sense dictates that conclusion.[38]

If someone does a good piece of research work and reaches a conclusion that is very well supported, that research is valuable as a reference or research tool. . . . the goal is uniformity and correctness.[39]

Presenting this description, Defendants conclude that letter rulings and technical advice memoranda are not "precedent" because only "the underlying principle of law is relied upon." [40]

U.S.App.D.C. 22, 424 F.2d 935, 938–40 (D.C.Cir. 1970); Wellford v. Hardin, 444 F.2d 21, 25 (4th Cir. 1971).

32. Hawkes v. I. R. S., 467 F.2d 784, 787 (6th Cir. 1972).

33. Defendants' Opposition at 4. Simmons Dep., pp. 10–23.

34. Defendants' Opposition at 4. Simmons Dep., pp. 27–29. The ruling writer determines in which file the ruling will be placed.

35. Id. Files occupying over two thousand linear feet of shelf space were laboriously re-stamped "reference" in place of "precedent." Simmons Dep., pp. 18, 58–59.

36. Defendants' Opposition at 5; Simmons Dep., pp. 27, 36, IRS Manual (11) 633.82.

37. Defendants' Opposition at 5–6; Simmons Dep., pp. 38–39; Levine Dep., pp. 18–19; Singer Dep., p. 21; Davitt Dep., p. 7.

38. Defendants' Opposition at 6; Levine Dep., p. 21; Davitt Dep., p. 32.

39. Defendants' Opposition at 7, Levine Dep., p. 21; Singer Dep., p. 7.

40. Defendants' Opposition at 7; Sheets Dep., 33. See National Cable Television Association, Inc. v. F. C. C., 479 F.2d 183, at 192 (D.C.Cir., 1973); where another agency argued unsuccessfully that it had not relied on certain documents but only on its "knowledge" derived from them.

and "the rulings writer reaches his own independent conclusions." [41]

The Court has no desire to plunge into the semantic debate the parties have established for themselves as to what is or is not "precedent." Suffice to say that, again, the plain and established meaning of the word leads to the conclusion that in the operational pattern set forth above the IRS "research tool" is in fact "precedent." [42] That a ruling is relied upon does not necessarily mean that it will be slavishly followed, for precedent is often only persuasive rather then controlling. Nor does reliance mean that the official decision maker is not free to reverse itself or overrule prior decisions if necessary. Just as within the Court system, the highest responsible authority within the agency is not bound to follow a "precedent" which on thorough examination he concludes is ill-founded or no longer appropriate. [43]

The record indicates that if a previously issued private letter ruling on a similar situation is called to the attention of the IRS in formulating a newly requested ruling the prior ruling will be regarded as most persuasive, if not dispositive. [44] Further, and more significantly, the IRS has at least once expressly relied on unpublished letter rulings in tax litigation. [45]

On the present record Plaintiffs are correct in their contention that the only difference between the use of earlier rulings by the IRS and earlier decisions by the Courts is that the IRS never *cites* earlier letter rulings in latter ones. Thus even if Defendants' view of the meaning of the statutory language "interpretations adopted by the agency" were correct, all letter rulings and technical advice memoranda in the reference file would still have to be disclosed and indexed. [46]

█ C. A point not raised by the parties, yet of importance in the Court's view, is that the debate over whether letter rulings are interpretations or precedents, no matter how decided, does not obviate the fact that letter rulings are undoubtedly "records" within subsection (a)(3) of the Act [47] and therefore subject to mandatory disclosure if no specific exemption is available. The dispute over whether the items are (a)(2) "interpretations" thus has practical significance for this case only insofar as (a)(2) requires a current public index. This may well be of importance to those seeking general infor-

---

41. Defendants' Opposition at 7; Davitt Dep., pp. 24–26.

42. Black's Law Dictionary defines precedent as follows: (Rev.4th Ed. 1968 at 1340):

> An adjudged case or decision of a court of justice considered as furnishing an example or authority for an identical or similar case afterwards arising or a similar question of law.

43. ". . . (C)hanges in position are made only after the most careful research and analysis and consideration at appropriately higher levels of review." IRS Manual (11) 152. The "appropriate level of review" is at least the highest level at which the earlier ruling was finally approved. Manual (11) 633.82, Item 7(b); Singer Dep., pp. 5–6.

44. Troyer Dep., p. 11; Jones Dep., pp. 17–26; Nolan Dep., pp. 29–31.

45. United States Thermo Control Co. v. United States, 372 F.2d 964, 967, 178 Ct.Cl. 561, cert. denied, 389 U.S. 839, 88 S.Ct. 68, 19 L.Ed.2d 103 (1967). The letter rulings relied upon by the IRS were held inconsistent with published rulings. See Reid, *Public Access to Internal Revenue Service Rulings*, 41 Geo. Wash.L.Rev. 23, 24, 32 (1972).

46. This consequence would be somewhat more narrow than that required by the Courts' holding in I–A, *supra*. The Court has held that *all* letter rulings and technical advice memos are interpretations adopted by the agency and must therefore be disclosed and indexed. If Defendants theory as examined in I–B is accepted as analyzed here only those letter rulings and technical advice memoranda in the *reference* files would have to be disclosed and indexed.

47. 5 U.S.C. § 552(a)(3):

> Except with respect to the records made available under paragraphs (1) and (2) of this subsection, each agency, on request for identifiable records . . . shall make the records promptly available to any person.

mation from the IRS, for the required index would aid in identifying the materials sought from the massive IRS files.[48]

## II

A. Exemption for Trade Secrets and Confidential Financial Information. 5 U.S.C. § 552(b)·(4).

▇▇▇▇▇ This exemption is claimed by the IRS for all items for which disclosure is sought. There is no dispute that the some of the materials here in question may contain confidential commercial or financial information, but there is significant dispute as to the scope and meaning of the exemption. "The Government argues that any information given the Government in confidence falls under this exemption."[49] This proposition is clearly unsupported by law. The Court of Appeals for this Circuit has held that this provision

> exempts only (1) trade secrets and (2) information which is (a) commercial or financial, (b) obtained from a person, and (c) privileged or confidential. The exemption given by the Congress does not apply to information which does not satisfy the three requirements stated in the statute.

Getman v. N. L. R. B., 146 U.S.App.D.C. 209, 450 F.2d 670, 673 (1971) quoting Consumers Union of United States, Inc. v. Veterans Administration, 301 F.Supp. 796, 802 (S.D.N.Y.1969). A bare claim or promise of confidentiality will not suffice,[50] for the materials must be "independently confidential"[51] based on their contents, i. e. not otherwise subject to public disclosure [52] and entitled to a reasonable expectation of privacy.[53] Further, "the exemption does not protect all data contained in such (materials), but only that information which cannot be rendered sufficiently anonymous by deletion of the filing party's name and other identifying information." National Cable Television Association, Inc. v. F. C. C., 479 F.2d 183 at 195, No. 24,786 (D.C.Cir. April 17, 1973).

▇▇▇▇ Defendants have relied thus far upon their broad claim of entitlement to this exemption. They have made no showing that any information here sought is in fact "independently confidential" and not susceptible to being rendered anonymous. Accordingly, all materials otherwise found nonexempt herein and subject to disclosure will be ordered disclosed *in toto* within thirty (30) days unless within that time the

48. See Irons v. Schnyler, 151 U.S.App. D.C. 23, 465 F.2d 608 (1972); National Cable Television Ass'n, Inc. v. F. C. C., 479 F.2d 183, No. 24,784 (D.C.Cir. April 17, 1973).

49. Defendants' Opposition (3/12/73) at 9.

50. Bristol-Myers Company v. F. T. C., 138 U.S.App.D.C. 22, 424 F.2d 935 (1970); Getman v. N. L. R. B., 146 U.S. App.D.C. 209, 450 F.2d 670, 673 (1971); Legal Aid Society v. Schultz, 349 F.Supp. 771, 776 (N.D.Cal.1972); Cf. St. Regis Paper Co. v. United States, 368 U.S. 208, 82 S.Ct. 289, 7 L.Ed.2d 240 (1961). To allow a promise of confidentiality by the agency to control would enable the agency to render meaningless the statutory scheme. Defendants' argument to the contrary is based on language of the House Report on the Act: "Moreover, where the Government has obligated itself in good faith not to disclose documentations or information which it receives it should be able to honor such obligations." House Report No. 1497,

89th Cong.2d Sess. 10 (1966). Yet here again this Court finds that the House Report "is characteristically broader and goes beyond the express terms of the statute." Getman v. N. L. R. B., 146 U.S.App.D.C. 209, 450 F.2d 670, 673 (1971); Cf. K. Davis, Administrative Law Treatise (1970 Supp.) §§ 3A.2, 3A.23. See Notes 27–32 and accompanying text, supra.

51. Fisher v. Renegotiation Board, 473 F.2d 109, 113 (D.C.Cir. 1972), M. A. Schapiro & Co. v. S. E. C., 339 F.Supp. 467, 470–471 (D.C.C.1972).

52. Fisher v. Renegotiation Board, 473 F. 2d 109, 113 n. 4 (D.C.Cir. 1972).

53. Getman v. N. L. R. B., 146 U.S.App. D.C. 209, 450 F.2d 670, 674 (1971); Bristol-Myers Company v. F. T. C., 138 U.S.App.D.C. 22, 424 F.2d 935, 938 (1970); Grumman Air Craft Engineering Corp. v. Renegotiation Board, 138 U.S.App.D.C. 147, 425 F.2d 578, 580 (1970).

agency bears its burden of demonstrating to the Court entitlement to this exemption for each item sought to be withheld. It is stressed that each such item must be shown to be independently confidential *and* not susceptible to being rendered anonymous. The agency must demonstrate both elements. As to any proposed deletions, the entire item in question must be submitted to the Court with the proposed deletions indicated and accompanied by an explanation of their necessity.[54]

B. Exemption for Matters Specifically Exempted from Disclosure by Statute. 5 U.S.C. § 552(b)(3).

■ This exemption is claimed as to letter rulings, technical advice memoranda, and related correspondence with taxpayers. Defendants contend that 26 U.S.C. § 6103(a)(1) is a specific statutory requirement that these items not be disclosed. Section 6103(a)(1) is the basic provision of the Internal Revenue Code providing confidentiality for tax returns.[55] The rulings and memos, however, are not returns, submitted by taxpayers, but documents generated by the agency. Those documents are, to be sure, based on information submitted by the taxpayer. But, first of all, a request letter from a taxpayer voluntarily submitting information and seeking tax guidance for his own purposes is not a return within the meaning of the statute.[56] It is only correspondence. If a taxpayer receives an adverse letter ruling, or no letter ruling, he may abandon the proposed transaction, in which event the correspondence will never become part of a "return." The fact that some information in certain correspondence *might*, at a later date, be included in a return does not convert the earlier correspondence into a return. Defendants argue that because the taxpayer is advised to file a copy of the ruling with his return,[57] the ruling thereby becomes a part of the return and confidential under the statute. This is a circular and self-fulfilling rationale which cannot be accepted. Any agency would thus be able to avoid the Freedom of Information Act and public disclosure of its decisions by requiring that the parties later attach copies of the decision to otherwise confidential submissions. This is not the purpose of the Internal Revenue Code or the Freedom of Information Act.

Secondly, to the extent that the taxpayer's interests in confidentiality are involved, they are fully protected by the express exemption from disclosure of truly confidential commercial or financial information.[58]

C. Exemption for Intra-Agency Memoranda. 5 U.S.C. § 552(b)(5).

This exemption is claimed as available for (1) correspondence relating to rulings, (2) the index-digest card summaries of rulings in the IRS reference system, and (3) memoranda of conferences and telephone calls (part of the communications relating to rulings). This ex-

---

54. See Fisher v. Renegotiation Board, 473 F.2d 109, 113 (D.C.Cir. 1972).

55. 26 U.S.C. § 6103(a)(1):
   Returns . . . shall constitute public records; but, except as hereinafter provided . . . they shall be open to inspection only upon order of the President and under rules and regulations prescribed by the Secretary or his delegate and approved by the President.

56. 26 C.F.R. § 301.6103(a)–1(a)(3) defines "return" to include:
   (a) Information returns, schedules, lists and other written statements filed by or on behalf of the taxpayer with the Internal Revenue Service which are designed to be supplemental to or become part of the return, and
   (b) Other records, reports, information received orally or in writing, factual data, documents, papers, abstracts, memoranda, or evidence taken, or any portion thereof, relating to the items included under (a) of this subdivision.

57. Note 6 and accompanying text, *supra*.

58. See II–A, *supra*.

emption is not claimed for letter rulings or technical advice memoranda.

■■ Exemption 5 was designed to protect and encourage the full and frank discussion of views within an agency in the formulation of agency policies and decisions. Thus, such expression of views in the decision-making and policy-making context within the agency is exempted from disclosure.[59] When faced with a disputed claim of this exemption, it is the duty of the Court to inquire into the nature of the materials, by means of affidavits, reference to a special master, or *in camera* review, to ascertain that they do in fact contain such an expression of views and to determine whether such expressions are joined with factual information which can and should be disentwined from the policymaking process.[60]

■■ The parties here have made no showing, by affidavit or otherwise, of the nature or contents of the three types · of items for which this exemption is claimed. It is the burden of the agency to justify its claim to exemption by more than blanket and conclusory assertions. In light of the limited volume of materials here involved the Court will order *in camera* review. With regard to the index-digest card system, if as its name implies and defendants themselves argue, this file summarizes rulings which have already been held herein to be subject to disclosure then the index-digest system would likewise have to be disclosed. Any information properly deleted from the ruling itself, under exemption 4, would of course also be deleted from the index-digest of that ruling.

D. Equitable Reasons for Non-Disclosure.

■■ Defendants argue that even if the Court should find that the materials here in question are subject to required disclosure under the Freedom of Information Act the Court should exercise the discretion inherent in its equitable powers and refuse to order disclosure. It is argued that disclosure would disrupt the agency's established procedures and possibly mean the end of the rulings program as it is presently known. Those consequences may well arise,[61] but here again Defendants' position is contrary to established precedent. Once a determination is made that materials come within the terms of the statute by which Congress has required disclosure the Court does not have discretion to refuse to order disclosure.[62]

Finally, it is clear from the record herein that private letter rulings are in fact widely disseminated among the tax bar and taxpayers with similar interests and problems, and that the IRS is aware

---

59. Environmental Protection Agency v. Mink, 410 U.S. 78, 93 S.Ct. 827, 35 L. Ed.2d 119 (1973), No. 71–909, Bristol-Myers Company v. F. T. C., 138 U.S. App.D.C. 22, 424 · F.2d 935, 939 (D.C. Cir. 1970), Soucie v. David, 145 U.S. App.D.C. 144, 448 F.2d 1067, 1078 (D.C. Cir. 1971), National Cable Television Ass'n, Inc. v. F. C. C., 479 F.2d 183 at 194, No. 24,786 (D.C.Cir. April 17, 1973), Tennessean Newspapers, Inc. v. F. H. A., 464 · F.2d 657, 660 (6th Cir. 1972).

60. Environmental Protection Agency v. Mink, 410 U.S. 73 at 87, 93 S.Ct. 827 at 836, 35 L.Ed.2d 119, 1973; National Cable Television Ass'n, Inc. v. F. C. C., 479 F.2d 183 at 194–195, No. 24,786 (D.C.Cir. 1973).

61. Wellford v. Hardin, 444 F.2d 21, 24 (4th Cir. 1971) :
"The Freedom of Information Act was not designed to increase administrative efficiency, but to guarantee the public's right to know how the government is discharging its duty to protect the public interest."

62. Soucie v. David, 145 U.S.App.D.C. 144, 448 F.2d 1067, 1077 (1971) ; Getman v. N. L. R. B., 146 U.S.App.D.C. 209, 450 F.2d 670–680 (1971) ; Wellford v. Hardin, 444 F.2d 21, 24–25 (4th Cir. 1971); Tennessean Newspaper, Inc. v. F. H. A., 464 F.2d 657, 661–662 (6th Cir. 1972) ; Hawkes v. I. R. S., 467 F.2d 787, 792 n. 6 (6th Cir. 1972).

of this practice.[63] Thus a body of "private law" has in fact been created which is accessible to knowledgable tax practitioners and those able to afford their services. It is only the general public which has been denied access to the IRS' private rulings. The IRS' argument that publication would cause grave damage to its ruling system, then, is viewed by this Court as a specter having little basis in fact. Those taxpayers most likely to rely upon or challenge the rationale of letter rulings issued to others already have access to many rulings through their own efforts. Publication would simply make available to all what is now available to only a select few, and subject the rulings to public scrutiny as well. Such public availability and scrutiny are the very fundamental policies of the Freedom of Information Act. For, "one fundamental principle is that secret law is an abomination." [64]

Appropriate Orders will be entered.

### ORDER

AUBREY E. ROBINSON, Jr., District Judge.

Upon the considerations expressed in the Opinion entered herein this date, and upon consideration of the entire record, it is this 6th day of June, 1973,

Ordered, that Defendants' Motion for Summary Judgment be and hereby is denied, and it is

Further ordered, that Plaintiffs' Motion for Summary Judgment be and hereby is granted, and it is

Further ordered, that Defendants shall make available to Plaintiffs for inspection and copying within thirty (30) days of date all letter rulings, technical advice memoranda and communications sought by Plaintiffs herein, intact and without deletion, except for those items which, within said thirty (30) days period, Defendants submit to the Court, sealed and intact, without deletion but with any proposed deletions indicated, for in camera review as to whether proposed deletion of information is justified under the Freedom of Information Act, together with a detailed written explanation of the justification for each deletion, and it is

Further ordered, that Defendants shall make available to Plaintiffs for inspection and copying within thirty (30) days of date all items in the Internal Revenue Service's index-digest reference card file sought by Plaintiffs herein, and all memoranda of conferences and telephone calls relating to the letter rulings and technical advice memoranda involved herein, unless within said thirty (30) day period those items are submitted to the Court for in camera review as to whether they may be properly withheld as internal memoranda within the meaning of exemption 5, 5 U.S.C. § 552(b)(5), of the Freedom of Information Act.

---

63. Troyer Dep., pp. 5–7, 11; Jones Dep., pp. 15–16, 17, 18, 26; Nolan Dep., pp. 29, 31; Steinbunchel Dep., p. 13; Levine Dep., pp. 11–12; Stafford Dep., pp. 6, 8, 11, 12–14, 21–22.

64. K. Davis, Administrative Law Treatise (1970 Supp.) § 3A.12. Cf. Sterling Drug Co. v. F. T. C., 146 U.S.App.D.C. 237, 450 F.2d 698, 708 (1971):
.  .  . (P)rivate transmittals of binding agency opinions and interpreta-

tions should not be encouraged. These are not the ideas and theories which go into the making of the law, they are the law itself, and as such should be made available to the public. Thus, to prevent the development of secret law within the Commission, we must require it to disclose orders and interpretations which it actually applies in cases before it.